**ABOOD et, Plaintiffs-Appellees, v. WEINGARTEN et, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23765.   Decided July 20, 1956.

Van Aken, Whiting, Arnold & Nash, for plaintiffs-appellees.
Gottfried, Ginsberg & Guren, for defendants-appellants.

(STEVENS, PJ, HUNSICKER and DOYLE, JJ, of the Ninth District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J:

Daher E. Abood and Herbert C. Macy, in an action in the Common Pleas Court of Cuyahoga County, sought and secured a judgment restraining the Shaker Park Terrace, Inc., an Ohio Corporation, from building to completion an apartment building on sublots 2 and 3 of The Van Sweringen Company's Subdivision (Allotment) No. 28.

The plaintiffs were each the owner of a single-family residence, situated on sublots 5 and 6, respectively, of the same division. The property owned by these litigants is located on the south side of Fairmount Boulevard, and east of Warrensville Center Road, in the city of Shaker Heights, Ohio. The action is predicated on the claim that the erection of an apartment building would violate certain restrictive covenants in the deeds, which it is claimed were part of a general plan for the subdivision, and enforceable by the plaintiffs as lot owners in the said subdivision.

An appeal on questions of law from the judgment of permanent injunction lodges the case in this court for review.

The evidence fully substantiates the following statement of facts in the trial court's opinion:

"In 1924, The Van Sweringen Company, a corporation, being the owner of certain land in the then village of Shaker Heights, joined with other owners of adjacent land to dedicate public streets therein by plat duly filed of record, the land being designated on the plat as 'The Van Sweringen Company's Subdivision No. 28.' The land outside of the streets is identified and referred to on the plat by 'blocks' with numbers. No building restrictions appear on the plat.

"On January 7, 1926, by warranty deed duly filed for record, The Van Sweringen Company conveyed to The Fairmount Development Company, a corporation, the northerly portion of Subdivision No. 28 by metes and bounds, containing about thirty-eight acres of land and having a frontage on Fairmount Boulevard, which is the northerly boundary of the subdivision, Belvoir Boulevard, which is the easterly boundary of the subdivision, and fronting on both sides of three interior streets of the subdivision. The land conveyed consisted of all the frontage on Fairmount Boulevard except one parcel with an eighty-foot frontage on the northeasterly portion of the subdivision and the parcel with about two hundred fifty feet of frontage on the boulevard in the northwest corner of the subdivision and fronting on another street as well.

"By plat acknowledged January 16, 1926, and duly recorded, The Van Sweringen Company, the Fairmount Development Company, and two other parties, subdivided the thirty-eight acres just referred to and other land into numbered sublots, the northwesterly parcel having a frontage of about two hundred fifty feet on Fairmount Boulevard above referred to, being numbered '1' and the lots to the east along the boulevard being successively numbered 2, 3, 4, 5, 6, etc. The thirty-eight acres was thus divided in eighty-seven sublots within Subdivision 28.

"Apparently the replat of Subdivision 28 and the conveyance to The

Fairmount Development Company were a part of the same transaction, since the deed provides that the premises should be subdivided and allotted in accordance with the plat prepared by a named engineering firm whose name appears on the plat of 1926. The deed further referred to sublots as they appear on the 1926 plat in setting up building restrictions. This plat, however, contained no building restrictions in itself."

The deed of 1926, above noted by the trial court, and given by The Van Sweringen Company to The Fairmount Development Company, contained language which is of vital importance to a decision herein. It is:

"1. Said real estate shall be used exclusively for private residence purposes; and no such building shall be erected, placed or suffered to remain upon said premises being less than two stories in height, nor the cost of construction of which shall be less than the amounts hereinafter specified for the different types of buildings hereby permitted upon the several streets; nor unless nor until the architect therefor, the size, type, cost, materials of construction, the color scheme therefor, the plot plan showing the proposed location of said dwelling upon the lot, and the plans, specifications and details therefor, shall have been approved in writing by The Van Sweringen Company * * *."

"4. No place of public entertainment, apartment house, flat, boarding house, hotel, tavern, dance hall or other resort * * * shall be erected, placed, established, conducted, maintained or suffered to remain upon said premises; provided, however, nothing herein contained shall be construed to prevent the erection of duplex houses, for the use of not more than two families, upon the corner lots herein designated for such use." (By other provisions eight corner lots were designated as available for duplex houses.)

"6. When the premises hereby conveyed are subdivided into lots, no sublot of the property hereby conveyed shall be occupied, leased, rented, conveyed, or otherwise alienated, nor shall the title or possession thereof pass to another, without the written consent of The Van Sweringen Company * * *."

"15. The restrictions imposed by this instrument upon the use of the within granted premises shall not be held to prevent the use of adjoining and adjacent lands by The Van Sweringen Company, or its successors or assigns, for such other purposes, or in such other manner. as will not, in its judgment, adversely affect the premises hereby conveyed, to a material degree, and such use of such other lands shall not be held as relieving the grantee hereunder from the restrictions imposed upon the premises hereby conveyed."

"16. The Van Sweringen Company, for itself, its successors and assigns, reserves also the right to waive, change or cancel any or all of these restrictions, if, in its judgment, the development or lack of development of adjoining or adjacent property in the subdivision of which these premises are a part, makes that course necessary or advisable."

"18. The herein enumerated restrictions, rights, reservations, limitations, agreements, covenants and conditions shall be deemed as covenants and not as conditions hereof, and shall run with the land, and shall

bind the grantee until the first day of May, 1999, in any event * * *; and the grantee herein agrees to require that these restrictions be recited at length in all future deeds of the premises hereby conveyed."

Ohio cases, as well as the majority of cases from other states, support, we think, the following statement:

When the owner of a parcel of land intends the same for use as building lots in the development of a scheme for the creation of an allotment, and sells and conveys the same by deed, in which is inserted restrictive covenants intended by the parties for the common and mutual benefit of all owners of lots to be carved out of the land sold, one who subsequently purchases a lot in the tract may enforce the restrictive covenants against all other owners who purchased their lots with either actual or constructive notice of the restrictions, because, as stated in **Smith et al, v. Volk et al, 85 Oh Ap 347:**

"3. Equity will grant injunctive relief in violation of restrictions in defendant's chain of title where it is shown that the defendant purchased the property with knowledge of a general building plan or scheme for the improvement of the subdivision and the tract in its entirety in accordance with restrictions contained in defendant's chain of title which are designed to make the tract more attractive for residential purposes."

The trial judge, in the case under consideration, had sufficient evidence to find, as he obviously did find, that the defendants had not only constructive notice of the restrictions on the various lots in the subdivision because they all stemmed from a common grantor and were in the chain of title of all of the lots falling within the description of the original deed from The Van Sweringen Company to The Fairmount Development Company, but that they had actual notice of restrictions which controlled a general building plan for the improvement of the entire subdivision.

Under the circumstances shown here to exist, it was not vital that the restrictions be specifically included in the deeds to the respective litigants.

The appellants, in arguing the assignments of error, pose the following questions:

"1. Are the deed restrictive covenants * * * part of a general plan—in the legal sense—binding upon the defendants and enforceable against the defendants by the plaintiffs who are merely landowners in the same subdivision?"

It is the opinion of the members of this court that the trial court had sufficient evidence before it to find in the affirmative on this question.

"2. Are the plaintiffs entitled to the restraining order in any event, in view of the changed character of the area?"

The evidence amply supports a finding that the character of the area has not sufficiently changed to preclude a court from enforcing valid restrictive covenants.

"3. Is plaintiff Abood in any event entitled to equitable relief, in that plaintiff Abood did not have 'clean hands'?"

The trial court's ruling should not and will not be disturbed on this ground because it is not borne out by the evidence.

"4. Is plaintiff Macey, having acquired legal title to his sublot after he had full knowledge of the fact that defendants were building the apartment and after this action was filed, entitled to equitable relief, even though he did have an equitable interest in the property prior to the suit?"

On this point, we agree with the statement of the trial court that "Plaintiff Macey had an equitable title, though not a legal one, when he filed his petition, and a court of equity will protect equitable titles as well as legal titles." This claim of the appellants we find untenable.

It is the conclusion of this court that there is no error in the record before us of a prejudicial character, and, as a consequence thereof, the judgment must be affirmed.

Judgment affirmed.

STEVENS, PJ, HUNSICKER, J, concur.