SCHURENBERG et al., Appellants,

v.

**BUTLER COUNTY BOARD OF ELECTIONS; Union
Township Board of Trustees et al., Appellees.**

[Cite as *Schurenberg v. Butler Cty. Bd. of Elections* (1992), 78 Ohio App.3d 773.]

Court of Appeals of Ohio,
Butler County.

No. CA91–05–096.

Decided March 23, 1992.

*Daiker & Miller* and *Fred Miller,* for appellants.

*Maxwell Wear,* for appellee Union Township Board of Trustees.

*Barrett & Weber* and *C. Francis Barrett,* for appellee Zaring National Corporation.

*Vorys, Sater, Seymour & Pease, Theodore Grosser* and *Andrew Kaplan,* for appellee Lakota Hills, Inc.

---

*Per Curiam.*

Plaintiffs-appellants, Carl Schurenberg, Glenn Hinnenkamp and Timothy Sendelbach, are owners of real property located in the Lakota Hills Estates subdivision in Union Township, Butler County, Ohio. Appellants purchased the property from defendant-appellee, Lakota Hills, Inc. ("Lakota Hills"), the developer of Lakota Hills Estates and Lakota Hills golf course. The Lakota Hills subdivision was developed in 1969 in conjunction with a one-hundred-fifty-six-acre golf course. The golf course is zoned R–2, a "Single Family Residence District," and R–4, a "Two Family Residence District."

It is appellants' contention that at the time they purchased property in the Lakota Hills subdivision, oral and written representations were made to them that the subdivision was being developed in conjunction with an adjoining golf course. The written representations were in the form of brochures and advertisements which described the planned community of homes and the golf course. The brochures advertising Lakota Hills subdivision included a drawing of the layout of home sites surrounded by the golf course. Although representations were made to appellants that a golf course would be included in the planned community, at no time have the appellants or Lakota Hills recorded any deeds, covenants, easements, or any other restrictions limiting the use of the one hundred fifty-six acres to a golf course.

In October 1989, Lakota Hills offered the one-hundred-fifty-six-acre golf course for sale. On March 14, 1990, defendant-appellee, Zaring National Corporation ("Zaring"), signed a contract to buy the real estate, and announced that it planned to build homes on the property consistent with the existing R–2 and R–4 zoning requirements. Before signing the contract to purchase the real estate, a title search was performed by Zaring which showed that no covenants or restrictions had been recorded requiring the property to be maintained as a golf course.

On May 18, 1990, defendant-appellee, the Union Township Board of Trustees ("trustees"), initiated a zoning change for the Lakota Hills property. An application was sent to defendant-appellee, Union Township Zoning Commission ("zoning commission"), requesting the zoning commission to rezone the property in question from R–2 and R–4 to R–1A, a larger lot single-family residential classification. On June 18, 1990, the zoning commission recommended to the trustees that the amendment to rezone the property be denied. The trustees subsequently held a meeting on July 10, 1990, wherein it voted two to one in favor of the zoning amendment. However, pursuant to R.C.

519.12(H), in the event the trustees would happen to deny or modify the recommendation of a township zoning commission, a unanimous vote of the board of trustees would be required to overturn the recommendation. Thus, the trustees denied the application by virtue of its failure to achieve a unanimous vote.

On July 31, 1990, Zaring purchased the one-hundred-fifty-six-acre golf course. The property ceased to be used as a golf course on September 6, 1990, and Zaring subsequently commenced development upon the property consistent with the R-2 and R-4 zoning requirements.

On September 27, 1990, appellants filed an action for declaratory judgment and permanent injunction against the appellees.[1] Appellants' complaint for declaratory judgment requested the court to determine whether or not the zoning commission had in fact recommended that the zoning application be denied. Appellants also requested the court to permanently enjoin Zaring from constructing residential dwellings upon the golf course. Appellants and appellees subsequently filed cross-motions for summary judgment. In separate decisions filed March 22, 1991, and March 27, 1991, the Butler County Court of Common Pleas overruled appellants' motion for summary judgment and granted summary judgment in favor of the appellees. From those two judgments, appellants have filed this timely appeal and assert the following two assignments of error:

"Assignment of Error No. 1:

"The trial court erred to the prejudice of plaintiffs-appellants when it granted appellees' motions for summary judgment on the issue of equitable servitude.

"Assignment of Error No. 2:

"The trial court erred to the prejudice of plaintiffs-appellants when it held that the property was not properly rezoned by the union township board of trustees."

Appellants argue that an equitable servitude arose prohibiting the construction of residential dwellings on the golf course because the property in question is part of a general scheme of development and oral representations were made to Zaring, prior to its purchase of the property, which put Zaring on notice that the golf course had been developed and promoted as part of a planned community. We find appellants' contention to be without merit.

---

1. The Butler County Board of Elections was originally named as a defendant. Appellants voluntarily dismissed their claims against the board of elections on November 16, 1990.

This court is well aware of the law's general aversion toward efforts to restrict land use. The Ohio Supreme Court held in *Bove v. Giebel* (1959), 169 Ohio St. 325, 8 O.O.2d 341, 159 N.E.2d 425, paragraph one of the syllabus, that:

"[t]he general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate."

Although generally viewed with disfavor, restrictive covenants will be enforced when they are part of a general plan or scheme for land use and control, and the purchaser of the land has notice of that plan or scheme. *Bailey Dev. Corp. v. MacKinnon–Parker, Inc.* (1977), 60 Ohio App.2d 307, 14 O.O.3d 277, 397 N.E.2d 405. In order for the covenant to be enforced as an equitable servitude against a subsequent purchaser, it must be shown that the purchaser had notice of the covenant and its application to the property he has purchased. The requisite notice can either be "actual notice" or "constructive notice" established by recordation of a prior instrument containing the restriction. *Appleby v. N. Constr., Inc.* (Sept. 23, 1985), Butler App. No. CA85–05–051, unreported, 1985 WL 7736; 5 Powell on Property (1949), Section 670[2].

It is undisputed in the case at bar that the recorded plats for the Lakota Hills subdivision contained no covenant restricting the use of the subject property to a golf course. Moreover, the chain of title to Zaring's deed did not prohibit development of the golf course for residential purposes. As a matter of law, therefore, Zaring cannot be charged with constructive notice. In the absence of a restriction in the purchaser's deed or in a recorded plat by which constructive notice may be imposed upon the purchaser, it must be shown that the purchaser had actual notice of the covenant. *Appleby, supra;* see, also, *Emerick v. Multicon Builders, Inc.* (1991), 57 Ohio St.3d 107, 566 N.E.2d 1189.

Here, appellants contend that Zaring did in fact have actual notice of appellants' claim for an equitable servitude on the golf course. Appellants first argue that before Zaring purchased the property, agents for Zaring were in attendance at public hearings wherein Lakota Hills property owners stated that they were induced to purchase their lots by Lakota Hills' representations that the golf course had been developed and would be part of a planned community. Secondly, appellants submit that Zaring had notice that a golf course had in fact been developed and was in operation on the property in question and, thus, it should have inquired as to any possible restrictions that might have existed on the property. We are not persuaded.

Appellants' contention that Zaring had actual notice of their claim for an equitable servitude upon the golf course is extraneous. We agree with Zaring that appellants have confused knowledge of a *possible claim* for a restriction upon the golf course with knowledge of an actual restriction. The facts in the record indicate that Zaring did have knowledge of appellants' claim of equitable servitude with respect to the property comprising the Lakota Hills golf course, and that a golf course may have been created as part of the property's general plan. Having knowledge of the golf course's existence and the equitable servitude claim, Zaring performed a title search upon the property's chain of title but found no covenant restricting the use of the golf course property. Even though they accepted the deeds to their lots without requiring that a use restriction be incorporated into their deeds or be referenced in a recorded plat, appellants nevertheless argue that an equitable servitude should be enforced with respect to the golf course. We hold that they cannot now seek to change their deeds to incorporate such a restriction.

In *Appleby, supra,* we concluded that if the purchasers of property lots were relying on the developer's representations that the restrictions in the additional subdivisions would be consistent with the lots they had purchased, the purchasers should have insisted that the developer file a master plat of record which included these restrictions. Such was not done in the instant action. Additionally, and as pointed out by the trial court in its decision, there was no covenant restricting the use of the property in question to a golf course because any written or oral representations concerning the use of the land were merged into the property's deed. It is well known that where a deed is delivered and accepted, any prior agreements or representations are merged into the deed, and no cause of action upon the prior agreement or representation thereafter exists. *Dillahunty v. Keystone Savings Assn.* (1973), 36 Ohio App.2d 135, 65 O.O.2d 157, 303 N.E.2d 750.

Moreover, we find it ironic that appellants now argue that equity demands that the golf course restriction be enforced because of appellants' alleged reliance upon Lakota Hills' representations. In 1981, many of the residents of the Lakota Hills subdivision, including Carl Schurenberg, formed a non-profit corporation known as Lakota Hills Country Club. Lakota Hills Country Club purchased the stock of Lakota Hills in order to assume operation of the golf-course facility and to place it under the control of the Lakota Hills residents. During the more than four years that Lakota Hills Country Club owned the stock, its members took no action to restrict the use of the property to a golf course. Appellants now call upon the court to take the steps needed to ensure that the property in question continues to be used as a golf course. However, it is a fundamental axiom that "[e]quity comes to the

vigilant and not to those who slumber on their rights." *Rosenstihl v. Cherry* (1926), 114 Ohio St. 401, 412, 151 N.E. 642, 645.

Here, appellants controlled the golf course for more than four years but failed to take any action during that period of time to restrict its use. In addition, they sold the stock to an individual from California without memoralizing their claims in any way. Finally, appellants failed to request that certain language be included in the property's deed or in the subdivision plat which would ensure that the property in question would continue to be used as a golf course.

Finding that appellants slept on their rights and that Zaring did in fact make a proper inquiry as to any possible restrictions that may have been imposed upon the property, we accordingly hold that appellees are entitled to judgment as a matter of law with respect to the issue of equitable servitude. Appellants' first assignment of error is therefore overruled.

Appellants allege in their second assignment of error that the zoning commission failed to make a recommendation to the trustees because its vote resulted in a two-to-two tie; thus, a unanimous vote was not required by the trustees to deny or modify the recommendation of the zoning commission.

On May 18, 1990, the trustees requested the zoning commission to amend the zoning requirements of the property covered by the golf course from the current R–2 and R–4 districts to an R–1A residence district. In order for the zoning commission to recommend an approval of any amendment, the "Organization Procedure, Rules and Regulations" for the zoning commission provides that:

"[a]ll actions of the Commission shall have the concurrence of at least three (3) members, and the failure to any proposed amendment or supplement to receive an affirmative vote of at least three (3) members shall be considered as a recommendation against such amendment or supplement and the recommendation shall be so recorded and certified to the township trustees."

In the hearing to decide the zoning amendment, two members of the zoning commission voted in favor of the rezoning, two voted against the rezoning, and one member was absent. Appellants contend that the two-to-two vote constituted a non-vote because the zoning commission's rules were drafted as guidelines in carrying out its duties and cannot be given any legal substantive authority or weight. Moreover, appellants argue that a tie vote cannot produce a valid final judgment because it is in essence a non-decision. Thus, since the vote was a non-decision by the zoning commission, appellants argue that there was no recommendation made to the trustees. Our review of Ohio

law and the zoning commission's rules and regulations indicate that such a vote should not be viewed as a non-vote.

R.C. 519.05 specifically states that "[t]he zoning commission shall organize, adopt rules for the transaction of its business, and keep a record of its actions and determinations." Such rules were adopted by the zoning commission on January 8, 1990, when it promulgated its "Organization Procedure, Rules and Regulations." Moreover, the zoning commission's rules and regulations provide in Section 10, Article II, that "[t]he conduct and procedures of all meetings of the Commission shall follow the rules as set forth by Roberts' Manual of Rules of Order for deliberative assemblies, unless otherwise specifically set forth in these regulations." According to Roberts' Rules of Order "[w]hen there is a tie vote the motion fails * * *." *Id.* at 73. Such a result is provided for in the zoning commission's rules and regulations, wherein it states that "the failure to receive an affirmative vote of at least three (3) members shall be considered as a recommendation against the amendment."

In the instant action, the zoning commission's vote failed to have the concurrence of at least three members and was therefore properly considered as a recommendation against the zoning amendment. Thus, the zoning commission correctly stated in its recommendation to the trustees that it recommended denial of the zoning change. See *Mac Realty, Inc. v. Commercial Indus. Ent., Inc.* (1967), 10 Ohio St.2d 227, 39 O.O.2d 365, 227 N.E.2d 210 (when a matter is put to a vote by a legislative body, such body has acted thereon irrespective of the outcome of such vote).

Finally, "[i]n the event the Board [of Trustees] denies or modifies the recommendation of the Township Zoning Commission, the unanimous vote of the Board [of Trustees] shall be required." R.C. 519.12(H). In the case at bar, two members of the board of trustees voted in favor of the zoning amendment while a third member voted against the amendment. Under the statute though, a majority vote is insufficient to overturn the recommendation of the zoning commission. A unanimous vote is required to deny or modify a recommendation and a failure to do so results in the adoption of the zoning commission's recommendation. See *Mac Realty, supra.*

We therefore hold that the trustees properly entered into record a resolution stating that by failing to achieve a vote necessary to overturn the decision of the zoning commission, the trustees deny the district change from R–2 and R–4 to R–1A. Accordingly, the trial court properly granted summary judgment in favor of the appellees. Appellants' second assignment of error is therefore overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.