[Cite as *BM-Clarence Cardwell, Inc. v. Cocca Dev., Ltd.*, 2016-Ohio-7751.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| BM-CLARENCE CARDWELL, INC. | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 16 CA 3 |
| COCCA DEVELOPMENT, LTD., et al. | |
| Defendants-Appellees | O P I N I O N |


CHARACTER OF PROCEEDING:  Civil Appeal from the Court of Common
Pleas, Case No.  12 CV 694


JUDGMENT:  Reversed and Remanded


DATE OF JUDGMENT ENTRY:  November 14, 2016


APPEARANCES:

For Plaintiff-Appellant                    For Defendants-Appellees

CHARLES E. TICKNOR, III            AMELIA A. BOWER
NITA L. HANSON                           PLUNKETT COONEY
DINSMORE & SHOHL, LLP            300 East Broad Street
191 West Nationwide Blvd., Suite 300   Suite 590
Columbus, Ohio  43215                Columbus, Ohio  43215

*Wise, J.*

{¶1}   Appellant BM-Clarence Cardwell, Inc. appeals from the decision of the Court of Common Pleas, Fairfield County, denying its motion for partial summary judgment and granting partial summary judgment in favor of Appellee Dollar General.

## STATEMENT OF THE FACTS AND CASE

{¶2}   The relevant facts are as follows:

{¶3}   Appellant BM-Clarence Cardwell, Inc. ("Cardwell") is the owner of certain real estate known as 1001 S. Main Street, Baltimore, Ohio.  Cardwell has owned and operated an IGA grocery store on the Property since 1999.  The IGA store is a general grocery store which sells gasoline, alcohol, and lottery tickets, in addition to groceries.

{¶4}   In 2004, Appellee Cocca Development, Ltd. approached Cardwell with a request to purchase a portion of the property for the development of a Dollar General store.

{¶5}   On November 3, 2004, the parties, BM-Clarence Cardwell, Inc. and Cocca Development, Ltd. entered into a sales agreement which contained the following "Restriction":

{¶6}   "2. Restriction. Buyer agrees that the Property shall not be used for the distribution of gasoline and liquid fuels, and that the retail store to be located thereon shall not offer groceries and/or alcoholic beverages as its primary products. For purposes of this Paragraph 1, the phrase "primary products" shall mean those products which either alone or combined account for 50% or more of the gross sales per annum conducted at the Property, whether by Buyer or Buyer's successor or assigns. Buyer

acknowledges that this restriction will be noted in the warranty deed from Seller to Buyer at closing."

**{¶7}** That contract provided for a closing date to be agreed upon by the parties.

**{¶8}** On November 18, 2004, Cocca entered into a lease with Appellee Dolgencorp, Inc. ("Dollar General") for the Property. Dollar General intended to operate a store on the premises.

**{¶9}** The Lease "provided for the unrestricted sale of groceries." The Lease included the following: "Lessor represents and warrants that it owns lawful fee simple title to a building measuring 9.014 square feet located at 1001 South Main Street in the City of Baltimore, County of Fairfield, State of Ohio 43105".

**{¶10}** On May 14, 2005, Cardwell executed a Warranty Deed for the 1001 South Main Street property to Cocca Development, Ltd. The Deed contains the following Restrictive Covenant:

Grantee covenants and agrees that the Fee Parcel shall not be used for the distribution of gasoline and liquid fuels and that no retail store located on the Fee Parcel shall offer groceries and/or alcoholic beverages as its primary products. For purposes of this deed, the phrase "primary products" means those products which either alone or combined account for 50% or more of the gross sales per annum conducted from the Property, whether by Grantee or Grantee's successors or assigns.

**{¶11}** The Deed was recorded on May 31, 2005, in OR Book 1389 Page 621 of Fairfield County Ohio Records.

**{¶12}** On September 21, 2005, Dollar General opened for business and continued to do so uninterrupted until August 5, 2011, when Cardwell notified Dollar General that the Property was being used in a manner which violated the Restrictive Covenant.

**{¶13}** According to Cocca, "[n]either Cocca Development, Ltd. nor Cocca Properties 2, LLC., mentioned to Dolgencorp., Inc. the restrictive covenant referred to in the [Purchase] Agreement when the Lease was signed or at any time thereafter."

**{¶14}** On June 26, 2012, EM-Clarence Cardwell, Inc. commenced this breach of contract action against Cocca Development Ltd, Cocca Properties 2, LLC (collectively "Cocca"), Dolgencorp, LLC, and Dollar General Corporation (collectively "Dollar General"), asserting claims for breach of contract, violation of a restrictive covenant, and injunctive relief. Specifically, Cardwell's claims were related to Dollar General's alleged violation of a restrictive covenant running with the land.

**{¶15}** Dolgencorp, LLC filed a Cross-claim against Cocca Development, LTD.

**{¶16}** A first Amended Complaint was filed on May 22, 2013, adding "John Doe Defendants 1-5".

**{¶17}** On July 26, 2013, Dollar General Corporation and Dolgencorp, LLC filed a Motion for Partial Summary Judgment.

**{¶18}** On August 2, 2013, EM-Clarence Cardwell filed a Motion for Partial Summary Judgment Concerning Enforceability of the Restrictive Covenant.

**{¶19}** On August 19, 2013, Dollar General Corporation and Dolgencorp, LLC filed a Cross-Motion for Partial Summary Judgment as to Enforceability.

**{¶20}** By Judgment Entry filed September 10, 2013, the trial court denied Dollar General Corporation/Dolgencorp, LLC's Motion for Partial Summary Judgment. In said

Entry, the trial court determined that DG did not qualify as a bona fide purchaser under Ohio's recording statute and, even if it did, it still had constructive notice because the deed containing the restrictive covenant was properly recorded before DG obtained any legal interest in the property pursuant to the estoppel by deed and after-acquired property doctrines.

{¶21} By Judgment Entry filed January 17, 2014, the trial court granted Dollar General Corporation and Dolgencorp, LLC's cross-motion, adopting facts established in the Court's September 10, 2013, Order and ruling that, "Because no privity of estate exists between Plaintiff and DG, the Court finds that the restrictive covenant set forth in the deed is not enforceable against DG."

{¶22} On April 21, 2014, EM-Clarence Cardwell sought reconsideration of the January 17, 2014, and moved for summary judgment on Counts Two, Three, Nine and Ten of the First Amended Complaint.

{¶23} Dollar General Corporation and Dolgencorp, LLC opposed that motion and moved for partial summary judgment on the issue of rescission.

{¶24} The Cocca Defendants also filed an opposition to the April 21, 2014, partial Motion for Summary judgment.

{¶25} On June 18, 2014, the trial court granted Dollar General Corporation and Dolgencorp, LLC's partial motion on the issue of rescission and overruled the Motion for Reconsideration and Partial Motion for Summary judgment against Cocca Properties 2, LLC.

{¶26} The remaining issues between EM-Clarence Cardwell and the Cocca defendants were tried to a jury. The Cocca Defendants filed a Cross -Appeal on the issues that went to trial which they later dismissed.

{¶27} Appellant BM-Clarence Cardwell now appeals the January 27, 2014, and June 18, 2014, Judgment Entries, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶28} "I. THE TRIAL COURT ERRED IN GRANTING DOLLAR GENERAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING CARDWELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO ENFORCEABILITY OF THE RESTRICTIVE COVENANT BECAUSE THE COVENANT IS VALID AND ENFORCEABLE AGAINST DOLLAR GENERAL UNDER OHIO LAW.

{¶29} "II. THE TRIAL COURT ERRED IN OVERRULING CARDWELL'S MOTION FOR RECONSIDERATION ON THE ISSUE OF THE ENFORCEABILITY OF THE RESTRICTIVE COVENANT BECAUSE PRIVITY OF ESTATE EXISTS BETWEEN CARDWELL AND DOLLAR GENERAL."

*Summary Judgment Standard*

{¶30} Civil Rule 56(C) in reviewing a motion for summary judgment which provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or

stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶31} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.,* 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist.1999).

{¶32} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

{¶33} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

**I.**

{¶34} In its First Assignment of Error, Appellant argues that the trial court erred in granting partial summary judgment in favor of Appellee and denying Appellant's motion for partial summary judgment as to the enforceability of the Restrictive Covenant. We agree.

{¶35} A restrictive covenant is a "private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property, [especially] by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put." *Canton v. State,* 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 28, citing *Black's Law Dictionary* 371 (7th Ed.Rev.1999). In the context of property law, a "covenant" denotes a contract that is either personal or "runs with the land." *Maasen v. Zopff,* 12th Dist. Warren Nos. CA98–10–135, CA98–10–138, and CA98–12–153, 1999 WL 552747, 3 (July 26, 1999). Restrictions running with the land are "intended to limit the grantee's use of the

land to specified purposes, with the object of protecting the interests of all landowners in the same allotment." *Id.*

{¶36} Generally speaking, restrictive covenants "run with the land"—i.e., they bind subsequent purchasers of real property, so long as the subsequent purchaser had notice of the covenant. *See, e.g., Emrick v. Multicon Builders, Inc.* (1991), 57 Ohio St.3d 107, 109, 566 N.E.2d 1189 ("[A] bona fide purchaser for value is bound by an encumbrance upon land * * * if he has constructive or actual knowledge of the encumbrance."); *see also Abood v. Weingarten* (1956), 74 Ohio Law Abs. 326, 135 N.E.2d 899, 902; *Kuebler v. Cleveland Short Line Ry.* (Cuyahoga C.P.1910), 20 Ohio Dec. 525, 10 Ohio N.P. (n.s.) 385. There are also "personal covenants," which do not run with the land, and are enforceable only against the covenantor. *See generally, Gillen–Crow Pharmacies, Inc. v. Mandzak* (1964), 8 Ohio Misc. 47, 220 N.E.2d 852, 857.

{¶37} In order for a restrictive covenant to run with the land, the following three factors must be met: (1) intent for the restrictive covenant to run with the land; (2) "touches and concerns" the land; and (3) the parties are in privity of contract. *Peto v. Korach* (1969), 17 Ohio App.2d 20; *Capital City Community Urban Redev. Corp. v. City of Columbus,* 10th Dist. No. 08AP–769, 2009 Ohio 6835; *Candlewood Lake Assn., Inc. v. Scott*, 10th Dist. No. 01AP-631, 2001-Ohio-8873; *See, also, LuMac Dev. Corp. v. Buck Point Ltd. Partnership* (1988), 61 Ohio App.3d 558, paragraph one of the syllabus; *Hughes v. Cincinnati* (1964), 175 Ohio St. 381, 383 385 (discussing previous Ohio Supreme Court decisions regarding covenants that run with the land). Personal covenants may also be enforceable against subsequent purchasers, provided that the purchaser had notice of the covenant. *Gillen–Crow Pharmacies* at 859.

{¶38} In addition to the above three requirements, when a person or corporation is seeking to enjoin the other person from violating a restrictive covenant, as Lone Star is, a notice requirement is added. *Schurenberg v. Butler Cty. Bd. of Elections* (1992), 78 Ohio App.3d 773, 777, 605 N.E.2d 1330. The requisite notice can either be "actual notice" or "constructive notice" established by recordation of a prior instrument containing the restriction. *Id.* Here, the restriction was recorded in the deed. Therefore, appellee had constructive notice.

{¶39} In the case before us, in its Judgment Entry of January 17, 2014, sustaining Dollar General's Motion For Partial Summary Judgment as to Enforceability, the trial court found that (1) Dollar General did have constructive notice of the Restrictive Covenant; (2) the original parties intended for the Restrictive Covenant to run with the land, and (3) the restrictive covenant touches and concerns the land. However, the trial court found that no privity of estate existed between Appellant Cardwell and Appellee Dollar General. (1/17/14 JE at 8).

{¶40} We will therefore turn our attention to the privity requirement. Privity is a succession of interest or relationship. *Metalworking Mach. Co., Inc. v. Fabco, Inc.* (1984), 17 Ohio App.3d 91, 477 N.E.2d 634, syllabus. One is in privity with another if he/she succeeds to an estate or an interest formerly held by the other. *Id.* at 92, 477 N.E.2d 634. Privity of the estate between the original grantor and subsequent grantees is generally required to enforce a restrictive covenant. *Peto,* 17 Ohio App.2d at 24, 244 N.E.2d 502.

{¶41} Ohio law recognizes two "types" of privity for purposes of enforcing restrictive covenants: horizontal privity, and vertical privity. *See Dingle v. Dick*, 10th Dist. Franklin No. 01AP-142, 2001-Ohio-8754). "Horizontal privity exists where the covenant

was created as part of a conveyance of real property between creating parties." *See City of Perrysburg,* and *Head v. Evans* (Feb. 11, 1981), Hamilton App. No. C 790831. There is no dispute that Cardwell and Cocca Development created the restrictive covenant as part of the conveyance of the Partitioned Property.

{¶42} Vertical privity can be either "strict" or "relaxed". Under Ohio law, "strict" vertical privity is the conveyance of an identical real property interest or the establishment of strict continuity of title among parties.

{¶43} "Relaxed" vertical privity, as set out in Restatement of the Law 3d, Property, Section 5.2, is established when the successor holds a lesser estate carved out of the estate held by the original party.

{¶44} In its holding, the trial court herein found that "privity requires successive ownership or possession of the identical estate in the same property." (1/17/14 Entry at p. 7 citing *Metalworking Mach. Co., Inc. v. Fabco, Inc.*, 17 Ohio App. 3d 91, 92,477 N.E.2d 634 (1984) ). In its analysis, the trial court applied the standard for strict vertical privity and determined that privity did not exist because the Partitioned Property was originally conveyed to Defendant Cocca in fee simple and subsequently conveyed to Dollar General as a leasehold interest. (1/17/14 Entry at p. 8.)

{¶45} Upon review, we find that strict privity is not required in order for a covenant to run with the land. As set forth by the Tenth District in *Dingle v. Dick*, *supra*:

> Further support for the view that a continuous chain of title running from the servient estate is not required in order for a covenant to run with the land is found in *Berger v. Van Sweringen Co.* (1966), 6 Ohio St.2d 100. In *Van Sweringen,* the Ohio Supreme Court held that the plaintiffs,

individuals who owned homes located in the same block as the servient property, could enforce a covenant restricting the servient estate to residential use irrespective of whether the individual plaintiffs could each establish a continuous chain of title running from their properties to the covenantee or the dominant estate. *Id.* at 104. In so holding, the court did not look to whether the plaintiffs could establish vertical privity, but looked, instead, to the intent of the covenanting parties to determine whether the plaintiffs' properties were intended to benefit from the covenant. *Id.* at 102-103. In looking to the intent of the covenanting parties, instead of vertical privity, the court was careful to note that its approach was not limited to cases involving uniform building plans or schemes. Notably, the most recent version of the Restatement has essentially adopted the approach utilized by the *Van Sweringen* court. *See* Restatement of the Law 3d, Property (1998), Section 5.2, Comments *b* and *d* (rejecting the doctrine of vertical privity and asserting that the intent of the parties should determine whether the benefits and burdens of a restrictive covenant runs with the land).

**{¶46}** The Restatement of Law (3d), Property §5.2 states:

Except as otherwise provided by the terms of the servitude, and except as provided in subsections (1), (2), and (3), and appurtenant benefit or burden runs to all subsequent owners and possessors of the benefited and burdened property, including a lessee * * * . *Id.*

**{¶47}** The comment (b) further explains that the Restatement no longer requires "strict" vertical privity for the enforcement of a restrictive covenant:

To establish vertical privity, a chain of title must be established between the original covenantor or covenantee and the person claimed to be bound by the covenant or entitled to its benefit. For "strict" vertical privity, the successor must hold the same estate (in durational, not geographical, terms) as the original party to the servitude; for "relaxed" vertical privity, the successor may hold a lesser estate carved out of the estate held by the original party. Lessees of the person holding the same estate as an original party to the covenant and life tenants of property in which the remainder or reversion is the same estate as that of an original party to the covenant are not in strict vertical privity, but meet the requirement for relaxed vertical privity.

* * *

The vertical-privity doctrine is not used in this Restatement to determine whether benefits and burdens should run to persons who acquired title by adverse possession, or to determine which benefits and burdens run to lessees, life tenants, and persons holding adversely to the owner of the property.

**{¶48}** *Id.* at Comment b.

**{¶49}** Based on The Restatement of Law (3d), Property §5.2 and the analysis in *Dingle* and *Van Sweringen, supra*, we conclude that Appellant may enforce the terms of the restrictive covenant against Appellee Dollar General. The trial court found from the facts surrounding the creation of the restrictive covenant that the parties intended the covenant to run with the property. The covenant also contains the phrase "successor and

assigns." The use of these words plainly indicates an intent that the covenant run with the land. *LuMac,* at 563. The Second and Third Appellate Districts have stated that the terms "successors" and "assigns" in the deed are evidence of intent for the covenant to run with the land. *Siferd v. Stambor* (1966), 5 Ohio App.2d 79, 86–87, 214 N.E.2d 106; *Meisse v. Family Recreation Club, Inc.* (Feb. 20, 1998), Clark App. No. 97CA54, unreported. Although the use of such terminology as "personal representatives, assigns, heirs, or successors" is not essential to create a restrictive covenant which runs with the land, use of these words clearly reflects upon and is indicative of the intention of the parties at the time of conveyance. *Siferd,* 5 Ohio App.2d at 86–87, 214 N.E.2d 106; *Meisse,* supra.

**{¶50}** We find that application of the doctrine of strict vertical privity would be inequitable in cases like the one *sub judice* as it would allow successive grantees of real property to avoid compliance with restrictive covenants simply by obtaining a leasehold interest instead of a fee simple interest.

**{¶51}** Appellants' First Assignment of Error is sustained.

**II.**

**{¶52}** In their Second Assignment of Error, Appellant argues that the trial court erred in overruling its motion for reconsideration.

**{¶53}** We find it unnecessary to address appellees' second assignment of error because the issue is moot based on our disposition of Appellant's first error.

**{¶54}** For the forgoing reasons, the judgment of the Court of Common Pleas, Fairfield County, Ohio, is reversed and this matter is remanded for further proceedings consistent with the law and this opinion.

By: Wise, J.

Gwin, J., and

Delaney, J., concur.

JWW/d 1025