Delaney, P.J.
{¶ 1} Defendant-Appellant Haaf Farms Homeowners Association appeals the September 15, 2016 judgment entry of the Fairfield County Court of Common Pleas.
FACTS AND PROCEDURAL HISTORY
{¶ 2} The Haaf Farms subdivision is located in Violet Township, Fairfield County. In the 1980's, Homewood Corporation began development of the Haaf Farms subdivision into lots for residential homes. On October 27, 1989, Homewood Corporation recorded a plat for Section 1 of the Haaf Farms subdivision ("1989 Plat"). Section 1 consisted of Lots 1 through 52.
{¶ 3} On November 17, 1989, Homewood Corporation recorded a Declaration of Protective Covenants for Section 1 of the Haaf Farms subdivision. The 1989 Declaration established that the lots in Section 1 were *63 to be used for only residential purposes, the square-footage of the dwellings, the location of the dwellings on the lots, utility easements, landscaping easements, and drainage easements. Lot 51 in Section 1 is burdened by a drainage easement. The 1989 Declaration did not establish or make any reference to a homeowners association, membership in a homeowners association, or any obligation to pay any homeowners association assessments.
{¶ 4} On June 4, 1990, Homewood Corporation transferred Lots 10, 47, and 51 of Section 1 by general warranty deed to Status Homes, Inc.
{¶ 5} Defendant-Appellant Haaf Farms Homeowners Association filed Articles of Incorporation with the Ohio Secretary of State on September 14, 1990. The purpose of the Haaf Farms Homeowners Association stated in the Articles of Incorporation was to establish uniform rules and regulations pertaining to the Haaf Farms subdivision. The Articles of Incorporation referred to a Deed and Code of Regulations, which were not included in the Articles of Incorporation. Pursuant to Article IV, membership in the Haaf Farms Homeowners Association was described as follows:
Each record owner of a fee simple interest in any Lot in the Subdivision, including all additional lots and phases or sections in the subdivision to be added at a later time, shall be a member of the Association, and shall be called a "Member". The foregoing is not intended to include persons or entities who or which hold an interest merely as security for the performance of any obligation. Membership shall be appurtenant to and may not separated from ownership of a Lot and transfer of a Lot shall automatically transfer membership to the transferee, together with all rights and obligations of the transferor with respect to the Lot and other property. Voting rights of Members shall be as set forth in the Deed and Code of Regulations.
{¶ 6} The Articles of Incorporation named the initial Trustees of the Haaf Farms Homeowners Association as Clark Bierl, Gary M. Klemek, and John H. Bain.
{¶ 7} On September 19, 1990, Homewood Corporation executed a general warranty deed granting 201.488 acres of land to John H. Bain ("1990 Declaration"). The 1990 Declaration described the property transferred in metes and bounds, not by lots. Article II of the 1990 Declaration included the same language as the 1989 Declaration. Article III included language not found in the 1989 Declaration. Article III of the 1990 Declaration established a homeowners association. The first provision stated in pertinent part:
In order to provide for the maintenance and landscaping of Reserves that may be hereafter be conveyed to said Association and entrance features and landscaping within the Haaf Farms Development, to contribute to the enjoyment of the owners of the development and to provide for other matters of concern to the owners of lots ("Lots"), which Grantor has or will organize a Homeowners' Association, which may be known as Haaf Farms Homeowners Association, * * *. * * * The Association membership shall be comprised of the record owners of all lot owners in the Subdivision, including additional lots and phases or sections in said subdivision to be added hereto at a later time and including all record owners of all lots in Section 1 of Haaf Farms if the same choose to join and become members of the Association. * * *
{¶ 8} The second provision of Article III refers to assessments:
Each owner of any improved Lot * * *, by acceptance of a deed or other conveyance *64 thereto, whether or not it shall be so expressed in such deed or conveyance, is deemed to covenant and agree to pay to the Association an annual assessment for Common Expenses (as hereinafter defined) and special assessments (as hereinafter provided). For purposes hereof, the term "Common Expenses" shall mean the expenses and costs incurred by the Association in performing the rights, duties and obligations set forth herein and in its Articles of Incorporation or By-Laws.
{¶ 9} On September 19, 1990, John H. Bain transferred the 201.488 acres back to Homewood Corporation.
{¶ 10} On November 30, 1990, Status Homes, Inc. transferred Lot 51 in Section 1 to Kent W. Parrill. On March 1, 1991, Kent W. Parrill transferred Lot 51 to Kent W. Parrill and Laurel K. Parrill. On August 1, 1994, the Parrills transferred Lot 51 to Plaintiff-Appellee Barry Lubow. On March 19, 1998, Plaintiff-Appellee Barry Lubow transferred Lot 51 to Plaintiff-Appellees Barry and Susan Lubow.
{¶ 11} The Lubows chain of title contains no reference to the restrictions set forth in Article III of the 1990 Declaration.
{¶ 12} The Lubows made no declaration to Haaf Farms HOA that as owners of Lot 51 in Section 1, they chose to become members of Haaf Farms HOA pursuant to the terms of the 1990 Declaration pertaining to the lot owners in Section 1. Haaf Farms HOA sent the Lubows annual assessment invoices for 2001, 2002, 2003, 2004, 2005, 2007, 2012, 2013, 2014, and 2015. Haaf Farms HOA retracted the invoices for 2001, 2002, 2003, 2004, 2005, and 2007. The Lubows paid the annual assessment under protest for 2012, 2013, 2014, and 2015.
{¶ 13} The Lubows have maintained the drainage easement pursuant to the terms of the 1989 Declaration.
{¶ 14} In 2014, the Lubows filed a declaratory judgment action against the Haaf Farms HOA. The Lubows sought a declaration they were not legally obligated to pay the annual assessment to Haaf Farms HOA. They also asserted Chapter 5312, the Ohio Planned Community Law enacted in 2010, was unconstitutional.
{¶ 15} Haaf Farms HOA and the Lubows filed cross-motions for summary judgment. The trial court denied the motions for summary judgment, finding genuine issues of material fact as to whether the restrictions found in the 1989 Plat bestow a benefit upon the Lubows so as to make Lot 51 part of a "planned community" and subject to the Ohio Planned Community Law.
{¶ 16} The trial court held a bench trial on July 25, 2016. At trial, the trial court found the parties contested the issues of (1) whether or not the 1989 Plat is a "common plan"; if so, (2) whether that "common plan" requires the Lubows hold property for the benefit of individuals owning lots as defined by R.C. 5312.01(M)(2) ; if so, (3) whether the Haaf Farms HOA can levy assessments against the Lubows; and (4) if levied, whether the assessments violate the Lubows' rights under the Ohio and U.S. Constitutions' Takings Clause and/or First Amendment.
{¶ 17} At the conclusion of the trial, the trial court ordered the parties to file proposed findings of fact and conclusions of law. On September 15, 2016, the trial court issued its decision. The trial court found the Haaf Farms subdivision was a planned community under R.C. 5312.01(M)(2). The trial court next found the 1989 Declaration was outside the Lubows' chain of title and because the Lubows' chain of title did not reference the Haaf Farms HOA or annual *65 assessments, the trial court could not impute the terms of the 1989 Declaration to the Lubows. The trial court did not address the constitutionality of the Ohio Planned Community Law.
{¶ 18} It is from this decision Haaf Farms HOA now appeals.
ASSIGNMENT OF ERROR
{¶ 19} Haaf Farms HOA raises one Assignment of Error:
{¶ 20} "THE TRIAL COURT ERRED IN FINDING THAT APPELLEES ARE NOT OBLIGATED TO PAY ANNUAL ASSESSMENTS TO DEFENDANT HOMEOWNERS' ASSOCIATION, EVEN THOUGH APPELLEES ARE 'OWNERS' IN A 'PLANNED COMMUNITY' AS DEFINED IN OHIO'S PLANNED COMMUNITY ACT."
ANALYSIS
{¶ 21} Haaf Farms HOA argues in their sole Assignment of Error that the trial court erred when it found the Lubows were not obligated to pay an annual assessment to the homeowners association. Upon our review of the trial stipulations, exhibits, and Ohio Planned Community Law, we affirm the trial court's judgment that the Lubows are not required to pay an annual assessment to the homeowners association.
{¶ 22} The parties did not file a transcript of the bench trial with this appeal. Haaf Farms HOA states it raises only issues of law in its appeal of the trial court's judgment. The trial stipulations and attached exhibits, therefore, will serve as the established facts in this appeal.
The Lubows' Chain of Title
{¶ 23} Haaf Farms HOA and the Lubows do not dispute the 1989 Plat, the 1989 Declaration, and the June 4, 1990 general warranty deed transferring Lot 51 from Homewood Corporation to Status Homes, Inc. do not require the owner of Lot 51 to be a member in the Haaf Farms HOA or to pay annual assessments to Haaf Farms HOA.
{¶ 24} After the June 4, 1990 transfer of Lot 51 to Status Homes, Homewood Corporation transferred the remaining lots to John H. Bain on September 19, 1990. The 1990 Declaration states, in pertinent part:
The Association membership shall be comprised of the record owners of all lot owners in the Subdivision, including additional lots and phases or sections in said subdivision to be added hereto at a later time and including all record owners of all lots in Section 1 of Haaf Farms if the same choose to join and become members of the Association.
On September 19, 1990, Bain transferred the property back to Homewood Corporation.
{¶ 25} On November 30, 1990, Status Homes, Inc. transferred Lot 51 in Section 1 to Kent W. Parrill. On March 1, 1991, Kent W. Parrill transferred Lot 51 to Kent W. Parrill and Laurel K. Parrill. On August 1, 1994, the Parrills transferred Lot 51 to Plaintiff-Appellee Barry Lubow. On March 19, 1998, Plaintiff-Appellee Barry Lubow transferred Lot 51 to the Lubows.
{¶ 26} In its September 15, 2016 judgment entry, the trial court found the preponderance of the evidence demonstrated there was nothing in the Lubows' chain of title that required the Lubows as owners of Lot 51 to be members in the Haaf Farms HOA or to pay an annual assessment to the Haaf Farms HOA. The September 19, 1990 transfer of 201.488 acres of property from Homewood Corporation to Bain and Bain to Homewood Corporation did not include Lot 51. Lot 51 was conveyed to Status Homes, Inc. on June 4, 1990; therefore, Homewood Corporation *66 and/or Bain had no right to transfer or bind Lot 51 to certain restrictions. Upon our review of the same exhibits utilized by the trial court, we agree with the trial court's finding of fact that there is nothing in the chain of title that requires the owner of Lot 51 to be a member of Haaf Farms HOA or to pay an annual assessment to Haaf Farms HOA.
The Ohio Planned Community Law
{¶ 27} Haaf Farms HOA contends while Article III of the 1990 Declaration may be inapplicable to the owners of Lot 51 in Section 1, the Ohio Planned Community Law empowers the board of directors of the Haaf Farms HOA to collect an annual assessment from all lot owners within the subdivision regardless of the language of the 1990 Declaration. Haaf Farms HOA asserts the Ohio Planned Community Law controls where the 1990 Declaration is silent. Statutory interpretation is a matter of law and is reviewed by this Court de novo. White v. Bergman , 5th Dist. Ashland No. 15-COA-010, 2015-Ohio-4137, 2015 WL 5783088, ¶ 11 citing Erie Ins. Co. v. Paradise , 5th Dist. Fairfield No. 2008CA00084, 2009-Ohio-4005, 2009 WL 2457649.
Overview of the Ohio Planned Community Law
{¶ 28} In 2004, the Ohio General Assembly revised the laws governing the management and operation of condominium property. The General Assembly later introduced Senate Bill 187 to establish requirements to govern the formation and operation of homeowners association or "planned communities." SB 187 created Chapter 5312 of the Ohio Revised Code, known as the "Ohio Planned Community Law," and became effective on September 10, 2010.
{¶ 29} Chapter 5312 establishes a uniform framework for the operation and management of "planned communities." R.C. 5312.15. The statute defines a "planned community" as:
a community comprised of individual lots for which a deed, common plan, or declaration requires any of the following: (1) That owners become members of an owners association that governs the community; (2) That owners or the owners association holds or leases property or facilities for the benefit of the owners; (3) That owners support by membership or fees, property or facilities for all owners to use.
R.C. 5312.01(M).
Applicability to Pre-Existing Planned Communities
{¶ 30} R.C. 5312.02(A) states that any planned community in Ohio is subject to Chapter 5312. The statute stipulates, however, its provisions supplement any planned community governing document in existence on the effective date of SB 187. R.C. 5312.15 reads:
This chapter shall be construed to establish a uniform framework for the operation and management of planned communities in this state and to supplement any planned community governing document that is in existence on the effective date of this chapter. In the event of a specific conflict between this chapter and express requirements or restrictions in such a governing document, the governing document shall control. This chapter shall control if any governing document is silent with respect to any provision of this chapter.
Further, the Ohio Planned Community Law is not retroactive. The Ohio Planned Community Law states that nothing in it invalidates any provision of a document that governs a planned community if that provision was in the document at the time the document was recorded and the document *67 was recorded before the original effective date of Chapter 5312. R.C. 5312.02(C).
Applicability of the Ohio Planned Community Law to Lot 51
{¶ 31} On November 17, 1989, Homewood Corporation recorded a Declaration of Protective Covenants for Section 1 of the Haaf Farms subdivision. The 1989 Declaration did not establish or make any reference to a homeowners association, membership in a homeowners association, or any obligation to pay any homeowners association assessments. On June 4, 1990, Homewood Corporation conveyed Lot 51 to Status Homes, Inc. On September 19, 1990, Homewood Corporation recorded the 1990 Declaration, which contained a provision for the collection of an annual assessment. Homewood Corporation recorded the 1990 Declaration providing for the annual assessment after it conveyed Lot 51 to Status Homes, Inc. At the time it recorded the 1990 Declaration, Homewood Corporation had no property interest in Lot 51.
{¶ 32} Because Homewood Corporation had no property interest in Lot 51 when it recorded the 1990 Declaration, the 1990 Declaration is outside the Lubows' chain of title. The 1989 Declaration, which does not contain a provision for an annual assessment, is within the Lubows' chain of title. The trial court concluded that because the 1990 Declaration was outside the Lubows' chain of title, the Ohio Planned Community Law prevented the Haaf Farms HOA from levying an assessment against Lot 51 because the Lubows had no constructive notice of the restrictive covenant.
{¶ 33} Haaf Farms HOA does not dispute in its appeal the 1990 Declaration is outside the Lubows' chain of title. It contends the statutory provisions of the Ohio Planned Community Law override the Lubows' chain of title. Haaf Farms HOA argues the Ohio Planned Community Law does not require the declaration authorizing the collection of assessments be in the chain of title-rather, for a homeowners association to collect an assessment, there must be a declaration that provides for assessments. The 1990 Declaration provides for assessments for the Haaf Farms subdivision.
{¶ 34} In support of its argument, Haaf Farms HOA refers this Court to the provisions in the Ohio Planned Community Law that state the homeowners association is required to collect assessments. R.C 5312.06(A)(2) requires the owners association to collect assessments for common expenses from owners in accordance with R.C. 5312.10. R.C. 5312.10(A)(3) states the board of directors shall assess the common expense liability for each lot at least annually, based on a budget the board adopts at least annually.
{¶ 35} Upon our review of the Ohio Planned Community Law and the facts of this case, we find Chapter 5312 does not supplant an analysis of the Lubows' chain of title. We agree with the trial court's conclusion that constructive notice is required to enforce restrictive covenants on real property. The Ohio Planned Community Law considers the notice requirements for restrictive covenants. R.C. 5312.03(B) requires a planned community establish an owners association not later than the date upon which the first lot in the planned community is conveyed to a bona fine purchaser for value. This provision is consistent with the common law principle regarding restrictive covenants on real property. Generally speaking, restrictive covenants "run with the land"-i.e., they bind subsequent purchasers of real property, so long as the subsequent purchaser had notice of the covenant.
*68 BM-Clarence Cardwell, Inc. v. Cocca Dev., Ltd. , 2016-Ohio-7751, 65 N.E.3d 829, ¶ 36 (5th Dist.) citing Emrick v. Multicon Builders, Inc. (1991), 57 Ohio St.3d 107, 109, 566 N.E.2d 1189 ("[A] bona fide purchaser for value is bound by an encumbrance upon land * * * if he has constructive or actual knowledge of the encumbrance."); see also Abood v. Weingarten (1956), 74 Ohio Law Abs. 326, 135 N.E.2d 899, 902 ; Kuebler v. Cleveland Short Line Ry. (Cuyahoga C.P.1910), 20 Ohio Dec. 525, 10 Ohio N.P. (N.S.) 385.
{¶ 36} There are five requirements for the creation of an enforceable restriction on the use of land by covenant. Lipchak v. Chevington Woods Civic Assn., Inc. , 5th Dist. Fairfield No. 14-CA-40, 2015-Ohio-263, 2015 WL 339395, ¶ 33 citing Dillingham v. Do , 12th Dist. Butler Nos. CA2002-01-004, 2002-Ohio-3349, 2002 WL 1396835. These requirements are as follows:
First, the restrictions must be a part of the general subdivision plan, applicable to all lots in the subdivision. Second, lot purchasers must be given adequate notice of the restriction. Third, the restrictions must be in accord with public policy, and they are unenforceable to the extent that they are not. Fourth, the restriction cannot be implied, but must be express. Fifth, the restrictions must run with the land, and therefore must be inserted in the form of covenants in the owner's chain of title. Otherwise, subsequent purchasers are not bound.
Id., quoting Maasen v. Zopff , 12th Dist. Warren Nos. 98-10-135, 98-10-138, 98-12-153, 1999 WL 552747 (July 26, 1999).
{¶ 37} Finally, R.C. 5312.10(C)(1) states the board of the owners association may not charge assessments for common expenses unless the declaration provides for or contemplates the charging of such assessments.
{¶ 38} The 1990 Declaration refers to the collection of an annual assessment. The 1990 Declaration is outside the Lubows' chain of title because Homewood Corporation conveyed Lot 51 to Status Homes, Inc. before the Homewood Corporation recorded the 1990 Declaration. The 1989 Declaration, which does not refer to the collection of an annual assessment, is within the Lubows' chain of title. As the trial court concluded, the Ohio Planned Community Law does not abrogate the Lubows' chain of title by supplementing the 1990 Declaration. The Ohio Planned Community Law recognizes the common law principle of constructive notice for restrictive covenants. In this case, the Lubows had no constructive notice of the 1990 Declaration. Accordingly, the owners of Lot 51 are not subject to an annual assessment levied by Haaf Farms HOA.
{¶ 39} The sole Assignment of Error of Haaf Farms HOA is overruled.
CONCLUSION
{¶ 40} The judgment of the Fairfield County Court of Common Pleas is affirmed.
Wise, John, J. and Wise, Earle, J., concur.