Day, J.
 

 Janie A. Dixon, plaintiff in error, purchased a lot in a highly restricted, exclusively residential district. Her predecessors in title had established these restrictions and placed them in their deeds, reciting “the herein enumerated restrictions, rights, reservations, limitations, agreements, covenants and conditions shall be deemed as covenants and not as conditions herein and shall run with the land and bind the grantee until the first day of May, 1999.” Such restrictions had been a matter of public record for several years, and, by accepting the deed containing the same, she is bound thereby, unless public policy or the law of the land forbid.
 

 In determining the validity of these provisions of the deed of Janie Dixon, inquiry should be made concerning the purpose of the same, the object, design, and reasonableness thereof. It is very generally recognized that “the owner of land, desiring to protect and improve the neighborhood for any special purpose, may impose such restrictions as he sees fit in making sales of his land, provided such restrictions are not against public policy, and a court of equity will generally enforce them.” See Thompson on Real Property, volume
 
 4,
 
 Section 3360, and cases cited. The proposition is well stated in 21 L. R. A., 1306, from the standpoint of a lot owner not a party to the original conveyance, but who has purchased land in such allotment:
 

 “The most familiar cases in which courts of equity have upheld the rights of owners of land to enforce
 
 *61
 
 covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of property has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. It may be stated generally at this point that where there is such a general plan or scheme of improvement, the owner of one lot may enforce such a covenant against the owner of another lot.”
 

 The ease of
 
 Wallace
 
 v.
 
 Clifton Land Co.,
 
 92 Ohio St., 349, 110 N. E., 940, recognizes this principle. It is to be remembered that defendant in error is still the owner of one lot in this allotment, and therefore stands in position not only as the original grantor, but also as a co-owner, and hence within the principle above announced. While these restrictions are very far reaching, they do not appear to have been placed in the deeds for any purpose other than to make a district where persons desiring exclusively residential property might buy and build. As far as monetary consideration is concerned, the original purchase price ends the financial advantage to the Van Sweringen Company, except with the enhancement of the value of the entire allotment. The purposes of such restrictions are well stated by Donahue, J., in
 
 Wallace
 
 v.
 
 Clifton Land Co., supra,
 
 where he says, at page 359 of 92 Ohio State (110 N. E., 942):
 

 “These restrictions were not imposed for the benefit of the original proprietor, further than the fact that the general and uniform plan of restricting the allotment to resident purposes might contribute
 
 *62
 
 to a readier sale of the lots. The real purpose of the restrictions was to guarantee to the purchasers a quiet residence locality, where they might build their homes and live apart from the noise of manufacturing and the bustle and confusion of the marts of trade. The great majority of these purchasers undoubtedly bought with this idea in view. Their grantor kept faith and imposed like restrictions upon all the lots in this allotment that were similarly located. The purchaser who bought with the intent or purpose of disregarding the restrictions and devoting the property purchased by him to any purpose that might suit his whim or his business needs, regardless of the restrictions written in his deed, has no standing in a court of equity.”
 

 An examination of the entire conveyance, with its elaborate provisions, which we will denominate “restrictive agreements,” the circumstances surrounding the allotment and its improvement, and the public record since 1924, lead us to the conclusion that no one could have purchased a lot in such subdivision and received such a deed and examined the public records relative thereto without being convinced that the conditions, covenants, reservations, etc., constituted a part of a general building scheme or plan for the development of a tract of property, designed to make it highly attractive for residential purposes, by reason of the restrictions imposed thereon.
 

 With these observations as to the purpose to be accomplished, are these restrictive agreements contained in the Dixon deed void as against public policy? A definition of the term “public policy” quite generally accepted is: “ That principle of law
 
 *63
 
 which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good.” It is a relative term, and must be interpreted in the light of the circumstances surrounding a particular contract or transaction; generally speaking, whatever is not forbidden by statute, nor contrary to judicial decision, nor against the public health, morals, safety, or welfare, or the like, is not against public policy. It attaches to the right to contract, and the public good requires that such right be protected and upheld when no principle above enumerated is violated. One of the most formal contracts known to the law is a deed for land. When the same is based upon a fair and adequate consideration, by persons competent to contract, under no duress, not overreached by fraud, and containing no provisions which affect adversely the interests of the public, the sustaining of such a contract makes an appeal to public policy quite as strong as any of the subjects within its protection.
 

 How is the public concerned in this deed? The record discloses no concrete act that affects the public, such as the construction of a street railway or the erection of telephone lines, etc. Rather is it the apparent desire of a lot owner to release the property in question from strictly residential purposes, and thus throw it open to such value as it might have if unrestricted, after having received the benefit of the improvements the years of restriction have given it. However, these restrictions are among the very elements that may contribute to the value of the lots affected thereby.
 

 In the presentation of this case by the plaintiff in error, the consideration of the so-called reservations
 
 *64
 
 was grouped under two heads: First, those dealing with the public improvements; and, second, those reserving the right to change grades and slopes and to change and cancel any or all of the restrictions upon the premises. In other words, those dealing with matters within the lot line and those affecting rights outside.
 

 As to the first group, to-wit, the reservations dealing with public improvements, plaintiff in error contends the same are void because they contravene and nullify certain provisions of the General Code and the public policy expressed therein, and because the rights and privileges created by these sections are inherently incapable of being the subject of reservation. Such provisions of the General Code are as follows:
 

 Section 3836, General Code, which provides that three-fourths of the abutting owners may petition the council for street improvements.
 

 Section 3818, which provides that notice of the passage of the resolution of the council, declaring the necessity for a street improvement, shall be served upon the owner of each parcel to be assessed in accordance with Section 3812, in the manner provided by law for the service of summons in civil actions.
 

 Section 9Í05, which provides that the consent of one-half of the abutting owners must be presented to the municipal council before a valid grant can be made for the construction of a street railway, as provided in Section 9101; and Section 9107, which provides that an owner may withdraw such consent before the council ordinance is read.
 

 Section 3770, which provides that the council must
 
 *65
 
 award the grant for the building of street railways to the person or corporation agreeing to carry passengers at the lowest rates.
 

 Section 9173, which provides that the owner’s consent is necessary before telephone, telegraph, or electric light poles may be erected on improved premises, or at such points in the highway that the premises might be injured if a pole is overthrown.
 

 "We see no reason why any of the privileges granted by these sections might not be exercised by some individual named by the owner. If so, why may not these various owners provide by their deeds for doing through another what they may do for themselves? In the case of
 
 Hamilton, Glendale & Cincinnati Traction Co.
 
 v.
 
 Parish,
 
 67 Ohio St., 181, 65 N. E., 1011, 60 L. R. A., 531, it was held that consents of owners of lots abutting on a street, consenting to the construction and operation of a street railroad on such street, are rights personal in their nature to each owner of the abutting lot, and that there is no public policy in this state against giving such consents for a valuable consideration moving from the street car company to such owner. If these rights are therefore subject to bargain and sale as personal rights of the owners of such lots, why may they not be transferred by a deed which takes them into consideration as a part of the transaction of purchase? Doubtless all these terms, conditions, reservations, etc., were fully considered by each purchaser at the time of acquiring his lot, and, unless he was willing to transfer such personal rights as a part of what he was paying for and receiving, he would not have purchased. If he saw fit to make such a bargain, we cannot say it was against public policy.
 

 
 *66
 
 We are cited to the case of
 
 Paterson & State Line Traction Co.
 
 v.
 
 Wostbrock
 
 (N. J. Ch.), 56 A., 698. In this case a brother and sister had given consents to the erection of a street railroad in front of their property, which consents they afterwards withdrew, the street car company sought to enjoin the Wostbrocks from withdrawing such consents. The court in its opinion uses this language:
 

 “There is not, therefore, and there cannot be, under our decisions, any right to consent, which is a general property right or easement attached to the ownership of the property, and the only right which complainant can enforce under such consents must be the statutory right which arises only in connection with some application or proposed application to the council for constructing its road. No application is now pending, and none may be hereafter made. No declaration should therefore be now made as to the right of withdrawal or the effect of the previous withdrawal.”
 

 In the absence of a concrete case, the bill for the injunction was dismissed. Whatever may be claimed for the rule in New Jersey we think the case of
 
 Hamilton, Glendale & Cincinnati Traction Co.
 
 v.
 
 Parish, supra,
 
 fixes the relative rights of parties in this state to bargain and sell such rights, if they see fit. In his opinion, Burket, J., especially notes the fact that the Legislature, while granting the power of consent and providing for the giving or withholding of the same, imposed- no conditions or limitations on such power, and that therefore this court may not amend the statute by construction and add limitations or conditions not imposed by the Legislature.
 

 Counsel upon both sides cite and discuss the case
 
 *67
 
 of
 
 Day
 
 v.
 
 Forest City Ry. Co.,
 
 5 C. C. (N. S.), 393, 17 C. D., 60, and the opinion in
 
 Forest City Ry. Co.
 
 v.
 
 Day, 73
 
 Ohio St., 83, 76 N. E., 396. The decision by this court was to the effect that an owner could not limit his consent for the benefit of any one person or corporation desiring to build a street car line, but that such consent inured to the benefit of the lowest bidder. We do not. regard that announcement as decisive of the question involved in this case, as there is no question before us as to the lowest bidder under Section 3770, General Code, for no street car line is being built, and this matter is not between the public authorities and a street car company, but between an original grantor and a subsequent grantee. This case does not involve the rights of the state or any of its subdivisions or any corporation exercising the right of eminent domain, It is, of course, well settled that the parties to a deed may not, by agreement, covenant, restriction, condition, or otherwise, deprive the state or any of its agencies of the exercise of its sovereign rights.
 
 Doan
 
 v.
 
 Cleveland Short Line Ry. Co.,
 
 92 Ohio St., 461, 112 N. E., 505;
 
 Ward
 
 v.
 
 Cleveland Ry. Co.,
 
 92 Ohio St., 471, 112 N. E., 507.
 

 As to waiver of the notice required in street improvement proceedings by Section 3818, General Code, formerly Section 2304, Revised Statutes, as interpreted in
 
 Joyce
 
 v.
 
 Barron, Treas.,
 
 67 Ohio St., 264, 65 N. E., 1001, we do not find that the deed in the instant case seeks to release the public authorities from performing any duties required by law, but does authorize the original grantor, the Van Sweringen Company, to act in behalf of an owner, should occasion arise. No concrete case is yet pre
 
 *68
 
 sented, and it may be that when one does arise the Van Sweringen Company will act in a manner highly beneficial to the then owner. We cannot say that it is against public policy for a lot owner to part with this right when he buys his lot, if he sees fit; and, in the absence of any infraction of public policy, such provision may not be declared void.
 

 Coming to the second class of reservations, to-wit, affecting the property inside the lot lines, relating to the establishing of grades, slopes, etc., and the reservation of the right to change or cancel any or all the restrictions on this property in favor of adjacent property owned by the Van Sweringen Company, these are reservations of a general nature, and are to be construed for the benefit of all the lot owners in the allotment.
 
 Wallace
 
 v.
 
 Clifton Land Co., supra; Kiley
 
 v.
 
 Hall,
 
 96 Ohio St., 374, 117 N. E. 359, L. R. A., 1918B, 961;
 
 Burton
 
 v.
 
 Cooper,
 
 8 N. P., 406.
 

 It is claimed these restrictions might be changed or canceled by defendant in error if in its judgment the development or lack of development of adjacent property makes that course necessary or advisable. “The word ‘adjacent’ is, at least, somewhat indefinite. Ordinarily, it means ‘to lie near, close, or contiguous.’ Webster. Even in its strictest sense it means no more than lying near, close, or contiguous, but not actually touching.”
 
 Hoopes
 
 v.
 
 City of Omaha,
 
 99 Neb., 460, 156 N. W., 1047.
 

 The construction to be given should be with reference to the context, and in this instance we think it should be regarded as applicable to the allotment of which plaintiff in error’s lot is a part and to the tract of land subject to the general building scheme
 
 *69
 
 or plan adopted by the original grantor when the same was laid out. Such judgment would have to be exercised reasonably, if the occasion should ever arise, and not in an arbitrary, captious manner, calculated to be obviously injurious to the rights of the lot owners in such allotment; and a court of equity would have power to protect rights affected thereby, if it should appear such authority was wrongfully exercised. We cannot see that the granting of such a right is necessarily against public policy, if parties wish to accept a deed containing such provision. The case of
 
 Hisey
 
 v.
 
 Eastminster Presbyterian Church,
 
 130 Mo. App., 566, 109 S. W., 60, illustrates the power of a court equity to protect a grantee under a deed containing a clause authorizing a grantor to vary restrictions.
 

 In the well-considered case of
 
 Whitney
 
 v.
 
 Union Railway Co.,
 
 11 Gray (77 Mass.), 359, 71 Am. Dec., 715, decided in January, 1860, Mr. Justice Bigelow, rendering the opinion, uses language, at page 363, which is applicable in principle to the fundamental doctrine that must control in this case, to wit,.the acceptance of a deed with full, ample, and complete notice of all conditions, covenants, agreements, restrictions, and reservations affecting the title conveyed theréby:
 

 “Every owner of real property has the right so to deal with it, as to restrain its use by his grantees within such limits as to prevent its appropriation to purposes which will impair the value or diminish the pleasure of the enjoyment of the land which he retains. The only restriction on this right is, that it shall be exercised reasonably, with a due regard to public policy, and without creating any unlawful
 
 *70
 
 restraint of trade. Nor can there be any doubt that in whatever form such a restraint is placed on real estate by the terms of a grant, whether it is in the technical form of a condition or covenant, or of a reservation or exception in the deed, or by words which give to the acceptance of the deed by the grantee the force and effect of a parol agreement, it is binding as between the grantor and the immediate grantee, and can be enforced against him by suitable process, both in law and equity.
 

 ‘ ‘ The more difficult question, and the one on which the decision of this case must turn, is, to what extent and in what cases are such stipulations binding on those who take the estate under the grantee, directly or by a derivative title? Upon this point, the better opinion would seem to be that such agreements are valid, and capable of being enforced in equity against all those who take the estate with notice of them, although they may not be strictly speaking real covenants, so as to run with the land, or of a nature to create a technical qualification of the title conveyed by the deed. This opinion rests on the principle that, as in equity that which is agreed to be done shall be considered as performed, a purchaser of land, with notice of a right or interest in it, subsisting in another, is liable to the same extent and in the same manner as the person from whom he made the purchase, and is bound to do that which his vendor had agreed to perform. Therefore an agreement or covenant, though merely personal in its nature, and not purporting to bind assignees, will nevertheless be enforced against them, unless they have a higher and better equity as
 
 bona fide■
 
 purchasers without notice. It is on this
 
 *71
 
 ground, that a purchaser of an estate, taking it with notice of a prior agreement by the vendor to sell it to another, can be compelled in equity to convey it according to such agreement. In like manner, by taking an estate from a grantor with notice of valid agreements made by him with the former owner of the property, concerning the mode of occupation and use of the estate granted, the purchaser is bound in equity to fulfill such agreements with the original owner, because it would be unconscientious and inequitable for him to set aside and disregard the legal and valid acts and agreements of his vendor in regard to the estate, of which he had notice when he became its purchaser. In this view, the precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform. Sugd. Vend. (11th Ed.), 734-743.
 
 Bedford
 
 v.
 
 British Museum,
 
 2 Myl. & K., 552.
 
 Bristow
 
 v.
 
 Wood,
 
 1 Collyer, 480.
 
 Whatman
 
 v.
 
 Gibson,
 
 9 Sim., 196.
 
 Schreiber
 
 v.
 
 Creed,
 
 10 Sim., 9.
 
 Barrow
 
 v.
 
 Richard,
 
 8 Paige [N. Y.], 356, 360 [35 Am. Dec., 713].”
 

 Also, at page 365 of 11 Gray, we find:
 

 “When therefore it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement, in the property
 
 *72
 
 granted, for the benefit of other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land.”
 

 See, also, the leading case of
 
 Tulk
 
 v.
 
 Moxhay,
 
 2 Phillips, 774, 41 Eng. Rep., 1143;
 
 Halle
 
 v.
 
 Newbold,
 
 69 Md., 265, 14 A., 662, and
 
 Brown
 
 v.
 
 Huber,
 
 80 Ohio St., 183, 88 N. E., 322, 28 L. R. A. (N. S.), 705.
 

 Until some concrete case arises, showing that public policy has been violated, we see no reason for denying the right of these parties to contract between themselves, the result of such contracts up to date being, as we are advised by the arguments of counsel, to create a highly exclusive and valuable residential district. Not only do these restrictive agreements operate in favor of the original grantor, but, where there is an improvement scheme covering an entire allotment, as here, with reference to which lots in the tract are sold and conveyed by deeds containing restrictive covenants, the grantee of one lot may enforce these covenants against the grantee of another lot and also against the grantor when the rights of the grantee are invaded.
 

 Entertaining this view, the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Kinkade, Robinson, Jones and Matthias, JJ., concur.