OPINION
Defendant-appellant, Daklak Cao Do, appeals a decision of the Butler County Court of Common Pleas, granting partial summary judgment in favor of plaintiffs-appellees, Dennis and Dawna Dillingham. We affirm the judgment of the trial court.
The parties are all property owners in the Tyler Meadows subdivision in Butler County, Ohio. The subdivision was developed by Cobblestone Development Company, which sold parcels subject to a restrictive covenant. The covenant dictates the placement and construction of fences, and prohibits entirely satellite dish antennas, sheds, and aboveground swimming pools. The covenant contains a provision excluding these restrictions from applying to lots owned by any "builder in the subdivision, and held for sale." The covenant was recorded on January 6, 1993 and its provisions were amended on September 30, 1993. However the general prohibitions against sheds, satellite dishes, aboveground pools, and nonconforming fences remained.
Appellant purchased the home at 8006 Tylers Way in 1996. At the time of the purchase the restrictive covenant was on record and there is no dispute that appellant had notice of its provisions. In the summer of 2000, appellant constructed an aboveground swimming pool on his property, in contravention of the restrictive covenant. Appellees subsequently filed a complaint, seeking to enforce the provisions of the covenant. In addition to taking issue with appellant's installation of an aboveground pool, appellees alleged that appellant had erected a nonconforming fence and shed on his property.
Both parties filed motions seeking summary judgment. The trial court found that the covenant terms pertaining to fences and sheds had been waived due to a proliferation of nonconforming fences and sheds in the development, and granted summary judgment in favor of appellant on these issues. However, the trial court concluded that the prohibition against aboveground swimming pools had not been waived, and that appellant's installation of an aboveground pool violated an express term of the restrictive covenant. The trial court granted summary judgment in favor of appellees on this issue and ordered appellant to remove the aboveground swimming pool. He appeals, raising two assignments of error.
Assignment of Error No. 1:
 "THE TRIAL [SIC] ERRED IN FINDING THAT THERE WAS NO ISSUE THAT THE COVENANTS APPLIED TO ALL LOTS IN THE SUBDIVISION."
Assignment of Error No. 2:
 "THE COVENANTS ARE UNENFORCEABLE AGAINST MR. DO BECAUSE THE COMMUNITY HAS ABANDONED THEM."
Summary judgment is proper when, looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chemical Corp.,73 Ohio St.3d 679, 686-87, 1995-Ohio-286. An issue of fact exists when the relevant factual allegations in the pleadings, affidavits, depositions or interrogatories are in conflict. Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735, 741. When deciding whether there is a genuine issue of material fact, the evidence and the inferences drawn from the underlying facts must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Co., 82 Ohio St.3d 482, 485,1998-Ohio-408. We independently review the grant of the motion for summary judgment and do not give deference to the trial court's determination. Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720.
An owner of land is free to adopt a general building plan for a development, designed to make it more attractive for residential purposes. See Maasen v. Zopff (July 26, 1999), Warren App. Nos. CA98-010-135, CA98-10-138, and CA98-12-153, at 8-9. This is usually accomplished through restrictive agreements to be imposed upon each of the separate lots. Id. Such restrictions will generally be upheld, provided the restrictions are not against public policy. Dixon v. VanSweringer Co. (1929), 121 Ohio St. 56. Where such a general plan exists, the owner of one lot may enforce the restrictive covenant against the owner of another lot. Id. at 61. Restrictive covenants should be construed to effect the purpose for which they were intended. SeeMaasen at 9, citing Dillon v. Gaker (1936), 22 Ohio Law Abs. 219, affirmed 57 Ohio App. 90.
There are five requirements for the creation of an enforceable restriction on the use of land by covenant:
"First, the restrictions must be a part of the general subdivision plan, applicable to all lots in the subdivision. Second, lot purchasers must be given adequate notice of the restriction. Third, the restrictions must be in accord with public policy, and they are unenforceable to the extent they are not. Fourth, the restriction cannot be implied, but must be express. Fifth, the restrictions must run with the land, and therefore must be inserted in the form of covenants in the owner's chain of title. Otherwise, subsequent purchasers are not bound."Maasen at 9-10 (citations omitted).
In his first assignment of error, appellant contends that the covenant is invalid because it does not apply to all of the property in the development. Appellant contends that the covenant term, providing that the restrictions are inapplicable to property owned by any "builder" and "held for sale," renders the covenant unenforceable. We disagree.
Restrictive covenants exist for the mutual benefit of property owners where there is a uniform general plan of improvement for the development. See Dixon, 121 Ohio St. at 60-61. Since each owner carries the burden of the restrictions and enjoys the benefits, neighborhood restrictions should be substantially uniform and imposed upon all lots. Id.
There is no factual dispute that the covenant restrictions in the present case apply to all of the lots in the development. While appellant argues that three years ago, more than three-fourths of the lots would have been excluded because they were then undeveloped, there is no indication in the record that, at the present, any of the lots remain undeveloped, and thus not subject to the covenant restrictions. The fact that the restrictions did not apply to all of the lots at some time in the past is unpersuasive.
Further, even if undeveloped lots remained, the covenant language excluding from its application those lots held for development and sale would not void the covenant restrictions. Restrictive covenants are often utilized to effect a general plan for a development. Such was the case in the present controversy. The restrictive covenant was drafted as part of a general plan for the development of the Tyler Meadows subdivision. Its restrictions are clearly intended to benefit the development's homeowners, and logically, will apply to each property as it is developed, as part of the general plan. As the covenant does not except any homeowner from its provisions, and has been recorded as to each lot in the subdivision, it applies equally to each property.
In the alternative, appellant contends that the covenant language is ambiguous, and urges us to construe the covenant to minimize the restrictions applicable to his property.
Ordinary rules of contract construction are used to construe a restrictive covenant. LuMac Dev. Corp. v. Buck Point Ltd. Partnership
(1988), 61 Ohio App.3d 558, 563. Thus, covenants should be construed consistent with the parties' intent. The first place courts look to determine this intent is the language of the covenant itself. WoodcreekAssn., Inc. v. Bingle (1991), 73 Ohio App.3d 506. This language should be given its common, ordinary meaning in light of the circumstances surrounding the creation of the covenant. Id., Benner v. Hammond
(1996), 109 Ohio App.3d 822.
Appellant first contends that the term "builder" is ambiguous since "what this individual must build is not specified." Appellant alleges that the common meaning of the term, "one that builds," is so vague and ambiguous that the covenant terms are unenforceable. Appellant concludes that "conceivably as long as someone constructs birdhouses in their basement they would not have to comply with any of the restrictive covenants."
The restrictive covenant was drafted as the subdivision was initially being developed. Considering the circumstances surrounding its creation, it is clear that the term "builder" as used in the covenant contemplates a contractor constructing a new home within the subdivision. While the term may have a broader meaning in common parlance, to apply the expansive definition that appellant suggests defies logic and the clear intent of the covenant's creators.
Appellant further contends that the phrase "held for sale" is ambiguous, and even illogical, as it is impossible to both "hold" and "market for sale" simultaneously. Appellant alleges that "to hold," defined as "to maintain possession of" is fundamentally at odds with the idea of marketing a property for sale. Appellant also points out that "held" is the past tense of "hold," which would indicate that the property has already been sold. We again disagree with appellant's characterization.
While this phrase may be grammatically imprecise, as pointed out by appellant, its meaning is not so vague as to render the covenant void. In light of the circumstances surrounding the creation of the covenant, it is clear that the phrase intends to connote property which is being developed for the sole purpose of selling it. The phrase clearly refers to property owned by a builder for any period of time before, during and after construction, while a buyer for the property is sought. There is no ambiguity in the covenant's terms. Accordingly, the first assignment of error is overruled.
In his second assignment of error, appellant contends that the covenant provisions have been abandoned, as evidenced by multiple instances of nonconforming fences, sheds, and satellite dish antennas in the development.
Restrictive covenants may become unenforceable when there is a waiver or abandonment of the restrictions, and if the nature of the neighborhood or community has so changed "that the restriction has become valueless."Landen Farm Community Service Assn. v. Schube (1992), 78 Ohio App.3d 231,235-236 citing Romig v. Modest (1956) 102 Ohio App. 225, 229. In essence, if the nature of a neighborhood or community has so changed that a restriction has become valueless to the owners of the property, a court will not, in the exercise of its discretion, enforce the restrictive covenant. Nevertheless, covenant restrictions may be enforced, even if other violations have occurred, provided that some value to the community remains in the restriction. Romig at 230; Brown v. Huber (1909),80 Ohio St. 183, paragraph two of the syllabus.
Having carefully reviewed the record, we find that there is ample evidence to support the trial court's finding that the value of the restrictive covenants concerning sheds, fences and satellite dish antennas has been destroyed. The proliferation of these nonconforming items indicates that they have been integrated into the community. SeeLanden Farms at 235. However, appellant has produced no evidence of other aboveground pools in the development or any other evidence that the community has waived or abandoned the restrictions related to aboveground swimming pools. The development remains a residential neighborhood in character and there remains some value to the community in enforcing this restriction. Appellant has not produced evidence that the abandonment of some of the covenant restrictions has resulted in an abandonment of the covenant in its entirety.
It is undisputed that appellant had notice of the restrictive covenant and is bound by its valid restrictions. It is further undisputed that appellant installed a pool which is at least two feet aboveground. The pool is in violation of the covenant's restriction against aboveground swimming pools, and appellees are entitled to summary judgment on this issue. The assignment of error is overruled.
Judgment affirmed.
POWELL and YOUNG, JJ., concur.