[Cite as *Hitchcock v. Delta Trust*, 2026-Ohio-600.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| CHRISTOPHER P. HITCHCOCK, TREASURER OF GEAUGA COUNTY, OH, | CASE NO. 2025-G-0026 |
| Plaintiff, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| DELTA TRUST, | Trial Court No. 2022 F 000571 |
| Defendant-Appellee, | |
| THE PRESERVE AT STONEWATER HOMEOWNERS ASSOCIATION, INC., | |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: February 23, 2026
Judgment: Affirmed in part, reversed in part, and remanded

*Lindsey A. Wrubel*, Eques Law Group, 9821 Olde Eight Road, #1, Northfield, OH 44067 (For Defendant-Appellant).

*John F. Burke, III*, Burkes Law, L.L.C., 55 Public Square, Suite 2100, Cleveland, OH 44113 (For Defendant-Appellee).

SCOTT LYNCH, J.

{¶1} Defendant-appellant (cross-claim plaintiff), the Preserve at Stonewater Homeowners Association, Inc., appeals the decisions of the Geauga County Court of Common Pleas, granting summary judgment in favor of defendant-appellee (cross-claim defendant), Delta Trust, and denying its motion for partial summary judgment. We hold

that a genuine issue of material fact exists as to whether the restrictive covenants asserted by the Stonewater Homeowners Association remain binding on Delta Trust and/or whether Delta Trust had constructive notice of those covenants. Accordingly, neither party is entitled to summary judgment at this stage of the proceedings. The judgment of the Geauga County Court of Common Pleas is affirmed with respect to the denial of the Stonewater Homeowners Association's Motion for Partial Summary Judgment and reversed with respect to Delta Trust's Motion for Summary Judgment. This matter is remanded for further proceedings consistent with this opinion.

***Substantive and procedural history***

{¶2} On October 3, 2022, the Geauga County Treasurer filed a Complaint in Foreclosure against the Stonewater Homeowners Association and Delta Trust for due and unpaid taxes, assessments, interest, and penalties in reference to property known as Sublot No. 1 in the Preserve at Stonewater Subdivision (10740 Crackel Road, Chagrin Falls). According to the Preliminary Judicial Report, Delta Trust was the owner of the property and the Stonewater Homeowners Association claimed a lien against the property for unpaid assessments.

{¶3} On November 1, 2022, Stonewater filed a cross-claim against Delta Trust for unpaid assessments and late fees.

{¶4} The dispute in the present case arose out of a prior foreclosure case, *Fifth Third Mortgage Co. v. Gallo*, Geauga County Court of Common Pleas, Case No. 11F001221. The trial court made the following findings (edited) regarding the prior litigation:

> On November 17, 2011, Fifth Third Mortgage Co. sued its
> borrowers, the Preserve at Stonewater Homeowners Association,

Case No. 2025-G-0026

Inc., and others. Fifth Third prayed: (1) "the property be sold free and clear of all liens, interests;" and (2) "all defendants to set up their liens or interest in the Property [Sublot No. 1 or 10740 Crackel Road] or be forever barred from asserting such liens or interests."

On January 10, 2012, Stonewater Homeowners Association was served.

On February 22, 2012, Fifth Third moved for default judgment against Stonewater Homeowners Association.

On March 8, 2012, the Court notified Stonewater Homeowners Association "Plaintiff has filed a Motion for Default Judgment … Plaintiff's motion shall be heard on … May 1, 2012, at 11:15 a.m."

On May 2, 2012, a "Judgment Entry and Decree in Foreclosure" was filed. The Court found Stonewater Homeowners Association in default and ordered "the Property shall be sold free of the interests of all parties to this action."

On November 15, 2012, the Court confirmed sale of the property to George Burke "free and clear of all liens and encumbrances."

In December 2012, Delta Trust acquired ownership of the Property by Sheriff's Deed. The Deed makes no mention of any homeowners association, restrictions, limits, obligations, easements, encumbrances, or restrictions of any kind.

{¶5} On January 17, 2025, the Stonewater Homeowners Association filed a Motion for Partial Summary Judgment and Delta Trust filed a Motion for Summary Judgment. The Stonewater Homeowners Association sought judgment as to whether the property at issue is part of the Stonewater subdivision subject to the Deed of Declaration of Restrictions filed with the recorder's office on July 6, 2007. Delta Trust sought judgment on the grounds that any rights of the Stonewater Homeowners Association to charge assessments or fees were extinguished when the default judgment was granted against the Association in the prior litigation and the property was purchased free and clear of all

Case No. 2025-G-0026

liens and encumbrances and deeded to Delta Trust.

{¶6}　On June 23, 2025, the trial court denied the Stonewater Homeowners Association's Motion for Partial Summary Judgment and granted Delta Trust's Motion for Summary Judgment, thereby dismissing the case.[1]

{¶7}　On July 18, 2025, the Stonewater Homeowners Association filed Notices of Appeal.

**Assignments of Error**

{¶8}　On appeal the Stonewater Homeowners Association raises the following assignments of error:

> [1.] The Trial Court erred in finding that the Association's failure to answer a prior foreclosure in 2011 operated to nullify all of the Association's restrictions through its 2007 Deed of Declaration of Restrictions in the current foreclosure action.
>
> [2.] The Trial Court erred in finding that the Association's recorded 2007 Deed of Declaration of Restrictions was unenforceable due to the plain language of R.C. 5312.02(D), which requires that the Bylaws rather than the Declaration be recorded prior to enforcement of the Declaration.
>
> [3.] The Trial Court erred in finding that the 2007 Deed of Declaration of Restrictions was an encumbrance upon the subject property, which was voided through the 2012 Judgment Entry and Decree in Foreclosure and 2012 Confirmation Entry.
>
> [4.] The Trial Court erred in finding that the Sheriff's Deed Conveying Title to Delta Trust with the language "This Deed does not reflect any restrictions, conditions or easements of record" legally operated to bar any restrictions and easements of record.
>
> [5.] The Trial Court erred in finding that Delta Trust was not subject to the 2007 Deed of Declaration of Restrictions.

---

1. Hitchcock's claims against Delta Trust were settled by an Agreed Judgment Entry filed on March 8, 2023.

Case No. 2025-G-0026

*Standard of review*

{¶9}    Summary judgment is properly granted when "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law," i.e., when "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C).

{¶10}  "When reviewing the decision of a trial court granting or denying a party's motion for summary judgment, an appellate court applies a de novo standard of review." *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30. "The appellate court conducts an independent review of the evidence without deference to the trial court's findings." *Id.* "It examines the evidence available in the record, including deposition or hearing transcripts, affidavits, stipulated exhibits, and the pleadings, *see* Civ.R. 56(C), and determines, as if it were the trial court, whether summary judgment is appropriate." *Id.* When a party seeks to resolve a case on summary judgment, the evidence cannot be weighed, only reviewed de novo. *Id.* at ¶ 32. "When factual ambiguities exist," and even when they do not, "inferences must still be resolved in favor of the nonmoving party." *Id.*

{¶11} Likewise, the construction of legal instruments including deeds and restrictive covenants is a legal issue and, accordingly, reviewed de novo. *Siltstone Resources, L.L.C. v. Ohio Public Works Comm.*, 2022-Ohio-483, ¶ 15 ("because this court reviews legal issues de novo, we are not constrained to accept the appellate court's legal analysis of whether CDC and other interest holders violated the deed's use restriction"); *J.T. Mgt. v. Spencer*, 2017-Ohio-892, ¶ 17 (11th Dist.) (the construction of deed

Case No. 2025-G-0026

restrictions presents a legal question reviewed under a de novo standard).

### *The Deed of Declaration of Restrictions*

{¶12}  The Deed of Declaration of Restrictions of the Preserve at Stonewater was recorded on September 11, 2007.  According to Article 14 of the Deed, all owners of sublots in the subdivision must be members of the Homeowners Association: "By acceptance of a Deed for a sublot or any other interest in the real property subject to these restrictions, each owner and/or subsequent owner consents to becoming a member of the Association."  The Association is "responsible for the maintenance of the decorative street signs, subdivision signs, entrance landscaping on Sublots 1 and outlot A, all retention ponds or other storm water management facilities … and the fire pond located on sublot 25."  The Association is governed by its by-laws: "The Association shall adopt by-laws and conduct its affairs in such a manner as its members and trustees shall determine …".

{¶13}  According to Article 24, the "Deed Of Declaration Of Restrictions Of THE PRESERVE AT STONEWATER SUBDIVISION shall continue and the obligations hereunder shall remain binding from the date of the filing of this Declaration in the Geauga County Recorder's office …"  Certain Articles, including Article 14, "may not be terminated or modified in any form and shall always remain effective and run with the land."

### *Restrictive covenants*

{¶14}  "A restrictive covenant is a private agreement that imposes a limit or burden on the use or occupancy of real property."  *Phelps v. Community Garden Assn., Inc.*, 2019-Ohio-1364, ¶ 21 (8th Dist.), citing *Canton v. State*, 2002-Ohio-2005, ¶ 28. "Restrictive covenants establishing plans for the development of a tract of property that

Case No. 2025-G-0026

makes the property more attractive for residential purposes are generally enforceable unless contrary to public policy." *DeRosa v. Parker*, 2011-Ohio-6024, ¶ 9 (7th Dist.), citing *Dixon v. Van Sweringen Co.*, 121 Ohio St. 56 (1929), paragraph one of the syllabus, and *Wallace v. Clifton Land Co.*, 92 Ohio St. 349 (1915), paragraph one of the syllabus. "Typically, membership in a property owners' association or the obligation to pay for the upkeep of common areas in a residential area is created through deed restrictions filed upon the creation of the district or subdivision." *Johnson's Island Property Owners' Assn. v. Nachman*, 1999 WL 1048235, *5 (6th Dist.).

{¶15} "Courts apply the ordinary rules of contract construction when interpreting a restrictive covenant and the primary objective is to determine the parties' intent as reflected in the language used in the restriction." *Whitney Woods Homeowners' Assn., Inc. v. Steagall*, 2025-Ohio-2784, ¶ 18 (10th Dist.).

{¶16} "A restrictive covenant will bind a subsequent purchaser of real property so long as that person had notice of the covenant." *Phelps* at ¶ 21; *Lake Milton Estate Property Owners Assn., Inc. v. Hufford*, 2018-Ohio-4784, ¶ 23 (7th Dist.) ("[i]t is axiomatic that restrictive covenants run with the land and bind subsequent purchasers of real property as long as the subsequent purchaser had notice of the covenant").

***First Assignment of Error: Whether the Trial Court improperly determined that the prior foreclosure in which the Association failed to assert its lien interest removed all restrictive covenants from the property and rendered it no longer part of the Homeowners Association***

{¶17} The trial court ruled that "Stonewater lost its encumbrance," *i.e.*, its right to enforce the Deed of Restrictions, "when it failed to appear and defend by raising its encumbering interest in Geauga C.P. 11F1221." However, no authority is cited for the proposition that the failure to assert the existence of deed restrictions in a foreclosure

Case No. 2025-G-0026

action results in the forfeiture of those restrictions following the sheriff's sale. On the contrary, the authority indicates otherwise.

{¶18} As noted, "[r]estrictive covenants run with the land and bind subsequent purchasers, if the purchaser had notice of the covenant." *Wells Fargo Bank, N.A. v. Michael*, 2013-Ohio-2545, ¶ 29 (7th Dist.); *Natl. City Bank v. Welch*, 2010-Ohio-2981, ¶ 14 (10th Dist.). In *Cleveland Baptist Assn. v. Scovil*, 107 Ohio St. 67 (1923), the Supreme Court of Ohio held that purchasers of foreclosed property at sheriff's sale were bound by a land use restriction contained in the deed. *Id.* at syllabus ("[t]he purchaser at sheriff's sale and his successor in title, both of whom received deeds embodying the restriction, are estopped from questioning the validity of the restrictions contained in their respective deeds").

{¶19} That the foreclosure of property does not necessarily interfere with the validity of restrictive covenants is also consistent with the law of other jurisdictions: 20 Am.Jur.2d, Covenants, Etc., § 233 (Nov. 2025 Update) ("[o]rdinarily, a restrictive covenant remains on property in the event of a foreclosure"); 87 C.J.S., Towns, § 194 (Dec. 2025 Update) ("[a]n in rem tax lien foreclosure does not wipe out restrictive covenants antedating the delinquent taxes"); Restatement of the Law 3d, Property, Servitudes, § 7.9 (2000) ("[i]f the lien was created later than the servitude, but is given priority ahead of earlier created interests by a statute other than a recording act, the foreclosure sale does not extinguish easements, restrictive covenants, conservation servitudes, or servitudes imposed as part of a general plan of development, unless the statute requires otherwise").[2]

_____

2. Stonewater Homeowners Association notes that, at the time of the underlying foreclosure, the restrictive covenant amounted to an encumbrance but not an actual lien on the property: "There is no dispute that the

Case No. 2025-G-0026

{¶20} The trial court noted that the sheriff's deed which transferred the property to Delta Trust stated that it was free of all encumbrances ("[t]his deed does not reflect any restrictions, conditions or easements of record") and that the August 2, 2022 preliminary judicial report showed that the property was not encumbered ("the record title to the land is at the date hereof vested in Delta Trust by instrument recorded in Book 1940 at Page 541 and free from all encumbrances, liens or defects of record"). Neither of these documents, however, is legally sufficient to nullify an otherwise valid restriction of record on the property.

{¶21} A preliminary judicial report is mandated "[i]n every action demanding the judicial sale of residential real estate consisting of one to four single-family units." R.C. 2329.191(B). "[T]he purpose of the preliminary judicial report is to establish the state of the record title to the underlying property as of the date of the initiation of the action." *Fed. Home Loan Mtge. Corp. v. Koch*, 2013-Ohio-4423, ¶ 31 (11th Dist.). The preliminary report, however, is not a comprehensive record of the chain of title. The "report shall include … [a] description of the record title to the real estate; however, easements, restrictions, setback lines, declarations, conditions, covenants, reservations, and rights-of-way that were filed for record prior to the lien being foreclosed are not required to be included." R.C. 2329.191(B)(6).

{¶22} Accordingly, the preliminary judicial report is of no value in determining the existence or validity of restrictive covenants. *See* Preliminary Judicial Report, Schedule B ("[w]e have made no examination for easements, restrictions, setback lines,

Association's right to any monies that were owed by the prior owner prior to and during the pendency of the prior foreclosure were extinguished by the Association's failure to respond to the complaint. However, the Association did not have a recorded lien at that time. The purpose of the foreclosure was to marshal liens–not to operate as a quiet title action to nullify any restrictive covenants of record." Appellant's Brief at 9.

Case No. 2025-G-0026

declarations, conditions, covenants, reservations, rights of way and mineral leases, if any, affecting the caption premises and no coverage for said matters, express or implied, is provided herein").

{¶23} Similarly, the delivery of the sheriff's deed upon sale of the property does not extinguish an otherwise valid restrictive covenant. This deed (actually prepared by the attorney who files the writ of execution while it is recorded by the officer who sells the real property) contains "the names of the parties to the judgment, the names of the owners of the property sold, a reference to the volume and page of the recording of the next preceding recorded instrument by or through which the owners claim title, the date and amount of the judgment, the substance of the execution or order on which the property was sold, the substance of the officer's return thereon, and the order of confirmation and deliver the deed to the officer who sold the real property." (Sic.) R.C. 2329.36(A). Beyond the next preceding recorded instrument, there is no requirement that the sheriff's deed reflect any restrictions, conditions, or easements of record.

{¶24} This deed "shall be prima facie evidence of the legality and regularity of the sale." R.C. 2329.37. "All the estate and interest of the person whose property the officer so professed to sell and convey … shall be vested in the purchaser by such sale." *Id.* By the terms of the statute, then, a sheriff's deed merely conveys the "estate and interest" of the person whose property is being sold such as it is. Neither the sale nor the deed expand or diminish that "estate and interest." The legal effect of the sheriff's deed has been described thus:

> By analogy, the sheriff's deed is merely a court-ordered transfer that is virtually identical to a quick-claim [sic] deed. The sheriff conveys, by order of the court, only that which he has authority to convey. The sheriff makes no warranty as to the quality of title. Purchasers who

Case No. 2025-G-0026

buy at a sheriff's sale, buy at their own risk. Deed restrictions, which are duly recorded in the proper chain of title, remain valid and binding.

*Kimberly Recreation Assn. v. Butts*, 1997 WL 170293, *2 (10th Dist.).

### *Constructive notice of the restrictive covenants*

{¶25} As the foregoing authorities attest, the determinative issue with regard to whether the Deed of Restrictions remains enforceable as to Sublot 1 is whether Delta Trust had notice of the restrictions at the time of purchase. *Tiller v. Hinton*, 19 Ohio St.3d 66, 68 (1985) ("a bona fide purchaser for value is bound by an encumbrance upon land only if he has constructive or actual knowledge of the encumbrance"). In the absence of any claim or argument that Delta Trust had actual notice, this issue is narrowed to the question of whether Delta Trust has constructive notice.

{¶26} "[T]he Ohio Supreme Court [has] adopted the view that, in order for a purchaser of real property to be charged with constructive notice of an encumbrance contained in a prior recorded instrument, the prior instrument must be recorded in the purchaser's chain of title." *Ohio Turnpike Comm. v. Spellman Outdoor Advertising Servs., LLC*, 2010-Ohio-1705, ¶ 24 (6th Dist.), citing *Sternberger v. Ragland*, 57 Ohio St. 148, 156 (1897); *Emrick v. Multicon Builders, Inc.*, 57 Ohio St.3d 107, 109 (1991) ("since the encumbrance was never recited in any deed in the chain of title, the purchaser could not be charged with constructive notice"); *Harbour Light Condominium No. 3 Assn. v. Unknown Heirs of Gentile*, 2019-Ohio-548, ¶ 25 (8th Dist.) ("[r]ecording such an instrument [executed for the encumbrance of lands] gives constructive notice to all persons dealing with the land of properly recorded instruments in the chain of title"); *Williams Creek Homeowners Assn. v. Zweifel*, 2008-Ohio-2434, ¶ 40 (10th Dist.) ("[w]hen

Case No. 2025-G-0026

restrictions are recorded in deeds within the seller's chain of title, subsequent purchasers are deemed to have constructive notice of those restrictions and are bound by them").

{¶27} In the present case, the question of whether the Declaration of Restrictions appears in the chain of title for Sublot 1 cannot be conclusively answered inasmuch as neither party has submitted evidence (such as a title search) on this issue. *See*, *e.g.*, *Harvest Credit Mgt. VII v. Ryan*, 2010-Ohio-5260, ¶ 20 (10th Dist.) (summary judgment was improper where "genuine issues of material fact with regard to appellee's chain of title and whether it is the assignee or purchaser entitled to collect upon appellant's specific account"); *Saddlebrook Homeowners Assn., Inc. v. Dunfee*, 1991 WL 82018, *2 (10th Dist.) ("[t]he presence of the restrictions in the chain of title is clearly evidenced by the fact that a title search by the title insurer discovered the Declaration of Restrictions, with the result that Dunfee's title insurance commitment specifically referenced the location of the restrictions in the grantor-grantee index").

{¶28} In sum, the trial court erred by finding that the prior foreclosure nullified the restrictions contained in the Deed of Restrictions with respect to Sublot 1.

{¶29} The first assignment of error is with merit.

***Second Assignment of Error: Whether the Trial Court improperly determined that the plain language of R.C. 5312.02(D) requires that the Bylaws of a planned community association must be recorded prior to enforcement of the Declaration of Restrictions***

{¶30} The trial court ruled that the Stonewater Homeowners Association cannot enforce its Declaration or Restrictions or any bylaws created pursuant thereto against Delta Trust because it did not file bylaws as required by R.C. 5312.02.

{¶31} Chapter 5312 of the Ohio Revised Code, known as the "Ohio Planned Community Law," became effective on September 10, 2010. *Lubow v. Haaf Farms*

Case No. 2025-G-0026

*Homeowner's Assn.*, 2017-Ohio-2973, ¶ 28 (5th Dist.). The trial court cited the following provision: "No board of directors of the owners association of a planned community that is in existence on the original effective date of this chapter, September 10, 2010, shall pursue any civil action against any person based upon any provision of the bylaws of that planned community or upon any amendments to the bylaws until the bylaws or amendments are filed and recorded under division (D)(1), (2), or (3) of this section." R.C. 5312.02(D)(5).

{¶32} The referenced divisions provide as follows:

(1) The board of directors of the owners association of any planned community that is in existence on the original effective date of this chapter, September 10, 2010, shall file and record the bylaws of that planned community that are in effect on that effective date in the office of the recorder of the county or counties in which the planned community is located within one hundred eighty days after that effective date.

(2) The board of directors of the owners association of any planned community that is in existence on the original effective date of this chapter, September 10, 2010, shall file and record the bylaws that are adopted by the owners association on or after that effective date in the office of the recorder of the county or counties in which the planned community is located within ninety days after the date of adoption of the bylaws.

(3) The board of directors of the owners association of any planned community that adopts an amendment to the bylaws of that planned community shall file and record the amendment in the office of the recorder of the county or counties in which the planned community is located within sixty days after the date of adoption of the amendment.

R.C. 5312.02(D).

{¶33} Also relevant are the following: "Nothing in division (D)(1) or (2) of this section shall require the board of directors or owners association of any planned community that is in existence on the original effective date of this chapter, September

Case No. 2025-G-0026

10, 2010, to adopt bylaws of that planned community." R.C. 5312.02(D)(4). "Nothing in this chapter invalidates any provision of a document that governs a planned community if that provision was in the document at the time the document was recorded and the document was recorded prior to the original effective date of this chapter, September 10, 2010." R.C. 5312.02(C).

{¶34} The foregoing provisions did not entitle Delta Trust to judgment as a matter of law. As an initial matter, the Stonewater Homeowners Association's claims are based in part on the Declaration of Restrictions and in part on bylaws.[3] Even if the provisions of the bylaws are unenforceable because they were not properly filed, the Homeowners Association still has claims under the Declaration which, pursuant to R.C. 5312.02(C), remain valid inasmuch as it was recorded prior to the effective date of the Planned Community Law.

{¶35} Furthermore, there is no evidence regarding the circumstances in which Stonewater Homeowners Association filed its bylaws (purportedly in 2017). There is no evidence as to whether the Association was in existence by September 10, 2010, and, if it was, whether bylaws had been adopted. Without evidence on these points the applicability of any of the provisions under division (D) is uncertain. If bylaws had not been adopted by September 10, 2010, then division (D)(1) has no application. If bylaws were adopted after September 10, 2010, it is necessary to know the date of adoption to determine whether they were recorded within ninety days thereof under division (D)(2).

---

3. Paragraph 6 of the Cross-Claim provides: "Pursuant to the Declaration of Restrictions and Bylaws, … Delta Trust …, as titled owner, is required to pay and the Preserve is authorized to collect and receive annual assessments and special assessments, and enforcement assessments, along with all reasonable collection expenses, including court costs, title fees and attorney fees pertaining to the collection of amounts due from each and every owner for common expenses of the Association."

Case No. 2025-G-0026

Likewise, it would be necessary to know the date of amendments to the bylaws (if any) to determine whether the amendments were properly recorded under division (D)(3).

{¶36} The second assignment of error is with merit.

***Third Assignment of Error: Whether the subject property was sold free and clear of covenants and deed restrictions or whether it was sold free and clear of liens and monetary encumbrances***

{¶37} The trial court ruled that the deed restrictions in the Declaration of Restrictions constituted an encumbrance on the property that was extinguished by virtue of the judgment in the prior foreclosure case, *Fifth Third Mortgage Co. v. Gallo*, Geauga County Court of Common Pleas, Case No. 11F001221. The Judgment Entry and Decree of Foreclosure in the 2011 case provided that "the Property shall be sold free of the interests of all parties to this action" and the Confirmation Entry of Sale provided that "[t]he Sheriff shall convey the Property to George Burke [trustee] by deed according to law free and clear of all liens and encumbrances." The trial court relied on "[t]he Judgments in 11F1221 and the Sheriff's Deed [to] establish the Property was transferred to Delta Trust free of all encumbrances."

{¶38} We disagree. The trial court properly recognized that encumbrance is a term encompassing a broad range of meanings: "[a] claim, lien, charge, or liability *attached to and binding* real property; e.g. a mortgage; judgment lien; mechanics lien; lease; security interest; easement or right of way; accrued and unpaid taxes." (Citation omitted.) *Dietl v. Sipka*, 2009-Ohio-6225, ¶ 14 (11th Dist.). The court also properly understood the Stonewater Homeowners Association's interest in the property as an encumbrance. Kuehnle, Levey, and Bower, *Baldwin's Practice Ohio Real Estate Law*, § 9:10 (Nov. 2025 Update) ("[i]n general, any restrictive covenant running with the

Case No. 2025-G-0026

land constitutes to some degree a restraint upon the fullest use and upon free alienability of the property," and, therefore, "it must be classed as an encumbrance"). In the context of the 2011 mortgage foreclosure, however, such a broad understanding of "encumbrance" or "interest" is inapplicable.

{¶39} As an initial matter, the trial court's ruling is contrary to the above-cited authorities that restrictive covenants run with the land and remain valid after foreclosure if the purchaser has notice. *Cleveland Baptist*, 107 Ohio St. 67, at syllabus; *Kimberly Recreation*, 1997 WL 170293, at *3. Conversely, this court is aware of no authority for the proposition that a decree of foreclosure necessarily nullifies restrictive covenants, easements, rights of way or other such interests that may be described as encumbering a property.

{¶40} Such a conclusion is also supported by the nature of foreclosure proceedings which encompass monetary interests in the subject property. "An action in foreclosure constitutes a proceeding for the legal determination of the existence of a mortgage lien, the ascertainment of its extent, and the subjection to sale of the property pledged for its satisfaction, and no more." *Carr v. Home Owners Loan Corp.*, 148 Ohio St. 533, 540 (1947); *Wells Fargo Bank, N.A. v. Young*, 2011-Ohio-122, ¶ 30 (2d Dist.) ("[t]he primary purpose and goal of a foreclosure sale is to protect the interests of the mortgagor-debtor while, at the same time, ensuring that the secured creditors receive payment for unpaid debts") (footnote omitted). "The order of foreclosure determines the extent of each lienholder's interest, sets out the priority of the liens, determines the other rights and responsibilities of each party, and orders the property to be sold by sheriff's sale." *Farmers State Bank v. Sponaugle*, 2019-Ohio-2518, ¶ 18.

Case No. 2025-G-0026

{¶41} The observations *supra* regarding the preliminary judicial report are also relevant here. It was noted that this report is not required to include "easements, restrictions, setback lines, declarations, conditions, covenants, reservations, and rights-of-way." R.C. 2329.191(B)(6). The natural inference is that a foreclosure action does not implicate such interests. "It is apparent from this that the reason for the title report is merely to make sure all parties are identified and joined [whose] interest may be cut off by the foreclosure of the lien. It is not the purpose of this filing to alert the buyer to the status of title nor to protect the buyer from title defects normally covered by a [title] policy." Kuehnle, Levey, and Bower, *Baldwin's Practice Ohio Real Estate Law*, § 19:48 (Nov. 2025 Update).

{¶42} We also find persuasive the fact that, in tax foreclosure proceedings under R.C. Chapter 5721, restrictive covenants are expressly excepted from the effects of sale: "upon the filing of the entry of confirmation of any sale …, the title to such land or lots shall be incontestable in the purchaser and shall be free and clear of all liens and encumbrances, except … easements and covenants of record running with the land or lots that were created prior to the time the taxes or assessments, for the nonpayment of which the land or lots are sold at foreclosure, became due and payable." R.C. 5721.19(F)(2). Although not applicable in the context of a mortgage foreclosure, the foregoing is certainly consistent with the case law regarding mortgage foreclosures. *Compare Geauga Cty. Treasurer v. Pauer*, 1993 WL 257242, *3 (11th Dist.) ("a public right of way such as Ohio Bell possessed is a covenant running with the land, and differs from a lien on land that can be foreclosed upon").

Case No. 2025-G-0026

{¶43} Finally, even the trial court's claim in the 2011 foreclosure case that the sheriff should convey the property "free and clear" of encumbrances is qualified both by the statute governing judicial sale of foreclosed property and the Confirmation Entry itself. According to statute, the sheriff's deed evidences the "legality and regularity" of the sale and conveys "[a]ll the estate and interest of the person whose property the officer so professed to sell." R.C. 2329.37. The statute does not provide that the mortgagor's estate and interest is without defect.

{¶44} While the Confirmation Entry instructs the sheriff to convey the property by deed free and clear of encumbrances, the Entry orders "the release of mortgages and liens held by all parties to [the] action" and the clerk of courts to have certificates of satisfaction recorded with respect "to each of the mortgages and liens" identified in the Entry. These mortgages and liens are the only encumbrances identified in the Entry, and no interest or encumbrance of the Stonewater Homeowners Association is identified therein.

{¶45} Accordingly, when the Decree of Foreclosure in the 2011 foreclosure case states the property shall be sold "free of the interests of all parties to this action" and the Confirmation Entry in that case states that the sheriff shall convey the property "free and clear of all liens and encumbrances," those "interests" and "encumbrances" must be understood as the interests of lienholders and secured creditors and others with a direct economic interest in the subject property.

{¶46} The third assignment of error is without merit.

Case No. 2025-G-0026

***Fourth Assignment of Error: Whether the trial court improperly determined that the plain language that is common to the 2012 Geauga County form for all sheriff's deeds operates to nullify all restrictions, conditions or easements of record, including that of a homeowners association***

{¶47} The trial court found that the sheriff's deed issued in the 2011 foreclosure action established that the subject property transferred to Delta Trust free from all encumbrances. The deed contained the following language: "This deed does not reflect any restrictions, conditions or easements of record." Like the trial court, Delta Trust interprets this language to mean that "there were no such restrictions, easements or encumbrances of record." Brief of Appellee at 20.

{¶48} For the reasons set forth under the prior assignments of error, we reject this interpretation. Rather, the sheriff's deed does not reflect restrictions, conditions, or easements of record because the deed is not required to reflect such encumbrances which remain unaffected by the sale. As observed by the court in *Kimberly Recreation*, the "sheriff makes no warranty as to the quality of title," and "[d]eed restrictions, which are duly recorded in the proper chain of title, remain valid and binding." *Kimberly Recreation Assn.*, 1997 WL 170293, at *2.

{¶49} The fourth assignment of error is with merit.

***Fifth Assignment of Error: Whether the trial court improperly determined that the Deed of Declaration of Restrictions for the Association was not in the chain of title and binding upon Delta Trust***

{¶50} In its Partial Motion for Summary Judgment, the Stonewater Homeowners Association sought judgment on the issue of whether Delta Trust's property is part of the Stonewater subdivision and subject to the Deed of Declaration of Restrictions. As explained under the first four assignments of error, the question of whether the property purchased at sheriff's sale by Delta Trust is subject to the Declaration of Restrictions

Case No. 2025-G-0026

depends on whether Delta Trust had constructive notice of the restrictions. And the question of whether Delta Trust had constructive notice of the restrictions depends on whether those restrictions appeared in the chain of title at the time of purchase.

{¶51} The Stonewater Homeowners Association argues that it was entitled to judgment inasmuch as the recorded 2007 Declaration of Deed of Restrictions and Plat for the Preserve at Stonewater Subdivision put Delta Trust on notice as a matter of law that Sublot 1 in the Stonewater Subdivision was subject to deed restrictions: "It would be impossible to conduct a title search which result[s] in no reference to the Association, or the Plat which created the plan of the subdivision." Appellant's Brief at 17.

{¶52} The Supreme Court of Ohio has observed that "[w]here a recorded deed to a lot forming part of a larger tract contains restrictive covenants, which by the terms of the deed are not only to apply to the lot conveyed, but … to other lands of the grantor, a purchaser of one of the lots is not charged with notice of the covenant contained in a prior deed from the common grantor to another lot or parcel of the general tract." (Citation omitted.) *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 336 (1984). Accordingly, there have been instances where a declaration of restrictions is recorded but nonetheless found to be outside of a purchaser's chain of title. *Lubow*, 2017-Ohio-2973, at ¶ 38 (5th Dist.); *Ohio Turnpike Comm.*, 2010-Ohio-1705, at ¶ 26 (6th Dist.).

{¶53} In the present case, the only documents evidencing Delta Trust's chain of title are the Declaration of Restrictions, Plat, and 2012 sheriff's deed. While these documents are some evidence that the deed restrictions might be in the chain of title, they are not sufficient to establish that fact as a matter of law. Without evidence of a title search or other alternate competent authority, the Stonewater Homeowners Association

Case No. 2025-G-0026

has not met its burden on summary judgment. *Compare Saddlebrook Homeowners*, 1991 WL 82018, at *2 (10th Dist.) ("[t]he presence of the restrictions in the chain of title is clearly evidenced by the fact that a title search by the title insurer discovered the Declaration of Restrictions").

{¶54} In sum, neither party was entitled to summary judgment.

{¶55} The fifth assignment of error is without merit.

{¶56} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed with respect to the denial of the Stonewater Homeowners Association's Motion for Partial Summary Judgment and reversed with respect to Delta Trust's Motion for Summary Judgment. This matter is remanded for further proceedings consistent with this opinion. Costs to be taxed between the parties equally.


JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-G-0026

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, assignments of error one through four are with merit and assignment of error five is without merit.  The order of this court is that the judgment of the Geauga County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Costs to be taxed against the parties equally.

_____
JUDGE SCOTT LYNCH

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-G-0026